THE STATE OF OHIO, APPELLANT, *v.* HYMORE, APPELLEE.

(No. 40058—Decided March 1, 1967.)

*Mr. Donald D. Simmons,* prosecuting attorney, and *Mr. Glenn C. Parsons,* for appellant.

*Mr. Clarence M. Condon, Mr. Robert J. W. Meffley* and *Mr. Beryl W. Stewart,* for appellee.

MATTHIAS, J. The points of claimed error will be considered in the sequence in which they are stated in the statment of facts, *supra.*

The first ground of claimed error is the admission, over objection, of "testimony of Deputy Sheriff McGiffin as to incriminating statements made by the defendant at the scene of the crime without constitutional warning." Deputy Sheriff McGiffin testified that he received a radio dispatch at 2:41 a. m.,

January 26, 1965, instructing him to proceed immediately to the Web Bar on East Broadway. When he arrived, Kendall (whom defendant had arrested) ran up to him asking to be put in protective custody. Thereupon, Deputy Sheriff McGiffin "walked on in and talked to Mr. Hymore [defendant]. I asked him what went on and what happened. And he said, 'I shot him!'" Defendant claims that the admission of this testimony constitutes prejudicial error and the Court of Appeals so held. Nothing could be further from the mark.

At the outset, it must be noted that at this juncture defendant, admittedly a police officer, had taken charge of a situation and called for the sheriff. To now say that when the requested officer arrived he must have immediatly informed the officer in charge of his constitutional rights is absurd. When Deputy Sheriff McGiffin entered the Web Bar he had no knowledge that a crime had been committed and had no possible suspects in mind. The investigative process had barely begun and he naturally asked the man he knew to be a police officer within his jurisdiction what had happened. Defendant's response was nothing more than an immediate and voluntary statement to this investigating officer's natural and routine opening question. After defendant made the statement complained of, McGiffin then talked to the witnesses and only after this did he place the defendant in custody.

Thus we have a situation unlike that in *Escobedo* v. *Illinois*, 378 U. S. 478, or *Jackson* v. *Denno, Warden*, 378 U. S. 368. Those cases deal with in-custody interrogation, voluntariness of a confession and the right to counsel. In the instant case, the statement made came at the very outset of a general inquiry. No suspect existed and indeed there was no indication that a crime had even been committed. Thus statements made by an officer to another officer who has responded to a summons from the first and has arrived soon thereafter are admissible into evidence where the statements are voluntary answers to preliminary, routine, investigatory questions. In short, this court is not disposed to require officers of the law to greet each other with warnings of constitutional safeguards whenever they meet at the scene of a disturbance unless adequate grounds for such precautions exist.

The second ground of claimed error is the admission, over objection, of "testimony by the coroner of incriminating statements given by the defendant to the sheriff in the presence of the coroner at the scene of the crime and on the trip from the scene of the crime to the Wood County jail." The coroner of Wood County, one Roger A. Peatee, testified at the trial as to *a* conversation *he* had with defendant while enroute from the Web Bar to the Wood County jail. Contrary to the opinion of the Court of Appeals, the coroner specifically stated that this was the *only* conversation he had with the defendant and that it was a *conversation* between him and the defendant rather than statements given to the sheriff, and that defendant did most of the talking. The record is void of mention of any interrogation, and the defense offered no testimony whatsoever on the subject of this conversation.

In view of this, the proper issue is whether evidence of the discussion between the defendant and the coroner was admissible. It is undeniable that the defendant was then in the custody of police officers. There is no indication in the record of whether defendant had been advised of his constitutional rights.

At this juncture it must be said that this case was tried in the gray area (June 1965) between *Escobedo* v. *Illinois, supra,* and *Miranda* v. *Arizona,* 384 U. S. 436. In the words of Mr. Justice Goldberg, the *Escobedo* decision deals specifically with a "refusal by the police to honor petitioner's request to consult with his lawyer during the course of an interrogation * * *." *Escobedo, supra,* at 479. Thus, the *Escobedo* decision has no application here for no such issue has been raised and in fact none existed. The *Miranda* decision is likewise inapplicable by the specific ruling of the Supreme Court of the United States which held in *Johnson* v. *New Jersey,* 384 U. S. 719, that the *Miranda* decision applies only to trials begun after the date of that decision, to wit, June 13, 1966.

Thus, the instant case is controlled by neither the *Escobedo* decision nor the *Miranda* decision. In fact, this case lacks one of the essential elements of those two cases, to wit, an in-custody interrogation. Instead the situation differs in that the defendant's remarks were virtually unsolicited comments made while enroute to the jail. At no time during the proceedings did

the defendant deny that he had made the statements attributed to him. At no time during the proceedings did the defendant contend that the statements attributed to him were made involuntarily. In contrast to the contentions now made, the record undisputably supports the view that the conversation between the defendant and the coroner was in fact made voluntarily under conditions which did not create any feeling that defendant was compelled to speak on pain of suffering physical or psychological mistreatment. Nothing in the record suggests any threat or prominse of leniency. The defendant was not suffering from bad health or mental derangement. There was no incommunicado detention and no interrogation. The circumstances of this case disclose that the defendant, a police officer himself, freely and voluntarily spoke to the coroner while being transported to jail. This is not even a case of a police officer fairly and noncoercively questioning a subject in order to fulfill his duty to ascertain the facts. (See *State* v. *Swiger*, 5 Ohio St. 2d 151, 160, certiorari denied, October 10, 1966.) Defendant's contention that this parallels *Jackson* v. *Denno, Warden, supra* (378 U. S. 368), is simply not supportable. Jackson was interrogated by police while lying in a hospital bed suffering from two bullet wounds and under the influence of drugs. Defendant here simply volunteered a statement of facts to the coroner while en route to jail. The absence of an interrogation coupled with the obvious voluntariness of defendant's remarks takes them out of the realm of inadmissible evidence.

The third ground of claimed error is the admission, over objection, of "testimony of Hazel Veler Johnson and Bonnie Veler elicited * * * on immaterial and collateral matters."

Hazel Johnson and Bonnie Veler were both present at the Wales Bar on the night of January 25, 1965, the former as a patron and the latter as a barmaid. Both were allowed to testify as to the defendant's activities there although neither saw him after he left to go to the Web Bar. The Court of Appeals held this to be improper and prejudicial error in that it was too remote. In this it was mistaken.

It is commonplace in a criminal trial for the prosecution to trace the defendant's steps prior to the time of an alleged

crime. In fact it is so well settled that the prosecutor may show antecedent circumstances that shed light upon an alleged crime that no party to this case has found any authority contra. The only limitation upon this general rule, as it applies to this case, is relevancy, and, although the test of relevancy is not always an easy one, we feel that the best test is: Where a particular fact tends to render probable a material proposition in issue then that fact is relevant.

The trial court has broad discretion in the admission and exclusion of evidence and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, this court should be slow to interfere.

In the instant case, defendant claimed that he was an officer of the law on official duty and was performing that duty when he shot the deceased. To counter this, the state produced the evidence in question which showed that defendant was socializing in a tavern outside the territorial limits of his jurisdiction and consuming alcoholic beverages. Such is hardly conduct indicative of a police officer preparing to go on duty let alone one who is on duty. In the words of the trial court: "No officer * * * in this county has a right to drink ever even a friendly drink while he is on the job." Such actions are clear grounds for dismissal and every officer knows this. This evidence is thus relevant and material. Its admission was proper for it sheds light upon the later events and the conduct of the defendant.

For the foregoing reasons, the judgment of the Court of Appeals is in error. However, since that court did not find it necessary to pass upon the fifth and sixth assignments of error, including the weight of the evidence, it is necessary for this court to remand this cause to the Court of Appeals for consideration of these assignments of error.

*Judgment reversed and cause remanded.*

TAFT, C. J., ZIMMERMAN, O'NEILL, HERBERT, SCHNEIDER and BROWN, JJ., concur.