The STATE of Ohio, Appellee,

v.

MORRIS, Appellant.

[Cite as *State v. Morris* (1995), 105 Ohio App.3d 552.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 67487.

Decided July 31, 1995.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, *Richard A. Bell* and *Thomas A. Rein,* Assistant Prosecuting Attorneys, for appellee.

*Ronald E. Klima* and *David Doughten,* for appellant.

---

O'DONNELL, Judge.

Appellant Andre Morris III appeals his convictions for involuntary manslaughter and felonious assault in the death of his ten-month-old baby, Roosevelt.

At 9:30 in the evening on February 3, 1994, when she returned home and discovered her baby not breathing, Manesia Kelly, Roosevelt's mother, called 911 for emergency help. Cleveland paramedics responded to the Morris residence within two to three minutes of that call, found ten-month-old Roosevelt lying in a pool of dried blood on the kitchen table, and began immediate efforts to save his life. They noticed a piece of plastic, which appeared to be part of a Bic pen, protruding from a hole in the baby's throat. As the paramedics attempted to perform CPR and establish an airway in the baby's throat, they realized that the infant was cold to the touch, blue, and already dead. One paramedic, Jack Steele, stated the baby had been dead for at least ten minutes. Members of the Cleveland Police Department, who arrived a short time later, saw appellant, who was covered in blood, run across the front yard of the home and police apprehended him after a struggle.

While in the Morris home, police and paramedics noticed overturned furniture, items lying all over the floor, and dried blood smeared on the kitchen wall and sink and covering the kitchen table. They also found drug paraphernalia on the table.

As officers drove appellant to the homicide unit of the police station, appellant told officers that he and his live-in girlfriend, Manesia Kelly, had been fighting all day. He admitted that he had smoked crack cocaine that day, the last time around eight o'clock that evening. Appellant claimed that he was alone in the house and heard Roosevelt upstairs choking, so he attempted to perform the Heimlich maneuver on the baby with no success. He also stated that he attempted to perform an emergency tracheotomy on the baby, which he had seen performed while stationed in Korea, by making an incision with a steak knife in Roosevelt's throat and inserting a pen to enable him to breathe air into the baby's chest cavity.

At trial, the state presented Manesia Kelly, who testified that on the morning of February 3, 1994, after cashing appellant's ADC check, appellant left the house with the money and later returned home with "two twenty rocks" of crack cocaine which he proceeded to smoke at the table. Kelly further testified that appellant

became physically and verbally abusive when he used drugs, that he had hit and kicked her, ripped clothes off her body, and tried to light her hair on fire. Testimony of neighbors corroborated this abuse. Kelly also testified that appellant had been "feaming," which means appellant picked at the white plaster on the kitchen wall, because he thought it was "dope" and tested it by trying to smoke it. At trial, Kelly also identified State's Exhibit 5 as the decedent's blood on the drywall where appellant had been picking that same day.

Dr. Carlos Santoscoy, Jr. of the Cuyahoga County Coroner's Office performed an autopsy on Roosevelt Kelly and determined the cause of death to be a stab wound to the neck causing excessive blood loss and hemorrhage and determined the manner of death to be homicide. Dr. Santoscoy found no food, liquid, or objects in the baby's stomach, nor did he discover any anatomical findings that would lead him to conclude that Roosevelt had been choking prior to appellant cutting his throat. He further testified that the baby's blood contained a trace amount of cocaine, and that cocaine can stay in a person's blood for as long as six and can be detected in urine for as long as seventy-two hours after ingestion. In addition, he stated that a baby can ingest cocaine from a mother's milk while breastfeeding, from oral ingestion of the cocaine itself, or from secondhand smoke. He also testified that a baby cold to the touch, covered in dried blood and not breathing could have been dead as long as thirty minutes.

At trial, appellant maintained that he attempted the emergency tracheotomy as a lifesaving measure because he believed Roosevelt was choking. Appellant also testified that he knew St. Vincent's Charity Hospital is located two-tenths of a mile from his home, but he failed to take the baby there on that day.

The defense also presented expert testimony from Dr. David Jacobs, the director of the trauma service at St. Luke's Medical Center, who testified that the wound he observed in the autopsy photograph was consistent with the performance of a tracheotomy.

Appellant was tried for murder, involuntary manslaughter, and felonious assault, and on May 17, 1994, a jury returned verdicts finding appellant not guilty of murder, but guilty of involuntary manslaughter and felonious assault in the death of ten-month-old Roosevelt. The next day, the trial judge sentenced appellant to a term of ten- to twenty-five years' incarceration for involuntary manslaughter, but did not impose any sentence on the charge of felonious assault.

Appellant has assigned three errors for our review.

## I

"The evidence is insufficient to sustain a conviction for the offense of involuntary manslaughter."

■ Appellant believes his conviction is not supported by sufficient evidence because no causal connection exists to prove that his drug abuse caused him to attempt the emergency tracheotomy on Roosevelt.

Appellee claims that sufficient evidence does exist to support jury verdicts of both involuntary manslaughter and felonious assault based on the testimony and evidence presented at trial.

The issue for this court, then, is whether sufficient evidence exists to sustain appellant's conviction.

■ The Ohio Supreme Court set forth the standard for sufficiency review in *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, where it stated at paragraph two of the syllabus:

"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. * * *"

■ The state's burden is to prove that appellant caused Roosevelt's death, and that the death proximately resulted from appellant's commission of any felony, in this case, felonious assault. R.C. 2903.11 defines felonious assault and states:

"(A) No person shall knowingly:

" * * *

"(2) Cause * * * physical harm to another by means of a deadly weapon * * *."

■ In this case, the jury returned a verdict finding appellant guilty of felonious assault, since appellant admitted that he cut the baby's throat with a steak knife, but maintained that this was done in an effort to save the baby's life by performing an emergency tracheotomy. The jury rejected appellant's claim that he was undertaking lifesaving measures on his choking ten-month-old baby. The weight to be given the evidence and the credibility of the witnesses are primarily for the jury as the trier of fact. See *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.

We next consider R.C. 2903.04, which defines the offense of involuntary manslaughter and states:

"(A) No person shall cause the death of another as a proximate result of the offender's committing * * * a felony * * *."

Our review of the evidence relating to the elements of involuntary manslaughter reveals that appellant has admitted that he performed the emergency tracheotomy on Roosevelt and the coroner testified that this caused Roosevelt to bleed to death.

We therefore conclude that the evidence presented by the state, if believed, would convince the average mind of appellant's guilt beyond a reasonable doubt. As such, the evidence in this case is sufficient to sustain a conviction for involuntary manslaughter and this assignment of error is without merit.

## II

"The trial court erred by allowing into evidence testimony regarding the cocaine content within the decedent."

Appellant argues evidence of a trace amount of cocaine found in the baby's blood was not relevant to the cause of his death and this evidence permitted the jury to speculate that appellant may have administered cocaine to the baby.

The state claims the evidence of cocaine in the baby's blood was relevant to show that appellant cut the baby's throat while in a crack-induced rage and that the probative value of this evidence outweighs its prejudice to appellant.

The issue for this court, then, is whether the trial court erred in admitting evidence of a trace amount of cocaine in the baby's blood.

Evid.R. 402 states that all relevant evidence is admissible. Evid.R. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Further, Evid.R. 403(A) provides:

"(A) * * * Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

" 'The trial court has broad discretion in the admission * * * of evidence and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, this court should be slow to interfere.' " *State v. Maurer* (1984), 15 Ohio St.3d 239, 265, 15 OBR 379, 401, 473 N.E.2d 768, 791, quoting *State v. Hymore* (1967), 9 Ohio St.2d 122, 128, 38 O.O.2d 298, 302, 224 N.E.2d 126, 130.

In this case, appellant has admitted that he cut the baby's throat. The state claims that appellant performed the act while in a crack-induced rage, not as a

lifesaving measure, which is corroborated by lack of any evidence of an obstruction in the baby's throat and no food in the baby's stomach. Manesia Kelly's testimony suggested that appellant became violent and abusive when using cocaine. The testimony of the coroner that a baby can get cocaine in its bloodstream from breastfeeding, oral ingestion of the cocaine itself, or second-hand smoke, and that cocaine can be detected for as long as six hours in blood and seventy-two hours in urine, allows the jury to infer the source of the cocaine found in the baby's blood. In this case, the evidence allows the jury to draw permissible inferences as to the veracity of appellant's claim of lifesaving measures or the state's view that appellant performed the act while under the influence of cocaine.

We therefore conclude that the evidence of cocaine in the baby's blood was relevant and the trial court did not err or abuse its discretion in admitting it. Therefore, this assignment of error is without merit and is overruled.

## III

"The trial court erred when defining the offense of involuntary manslaughter, R.C. § 2903.04, by providing the jury with alternative underlying felonies in contravention of Crim.Pro.R. 31(A)."

Appellant argues that the trial court violated Crim.R. 31(A), which requires a verdict to be unanimous, by instructing the jury on alternative theories to support a conviction for involuntary manslaughter because this instruction could lead to a "patchwork" verdict in which the jury did not reach unanimity.

Appellee contends defense counsel failed to raise this objection at trial and it is therefore waived and also that there can be no issue of jury confusion because the jurors returned a unanimous verdict of felonious assault as the underlying felony of involuntary manslaughter.

The issues for this court, then, are whether defense counsel properly raised this issue at trial and whether the court's instructions to the jury were appropriate.

We begin with a review of the transcript to determine whether the issue was timely raised at trial. At page 615, it states:

"THE COURT [to the jury]: So * * * you have to make a specific finding that the death was proximately caused by a felony. Now those felonies would be either drug abuse or felonious assault. Okay?"

Further, at page 616 of the transcript, defense counsel at side bar stated:

"ATTORNEY VEGH: I'm going to object to the jury being charged on the drug abuse-manslaughter charge. It wasn't in the indictment and I've never been supplied with *mens rea* on that and that is the extent of my objection."

We conclude that defense counsel properly called the matter to the court's attention and preserved the issue for appeal.

■ We next consider the propriety of the court's jury charge in light of the suggestion that a patchwork verdict was returned. We begin this analysis by reviewing Crim.R. 31(A), which states:

"Return. The verdict shall be unanimous. It shall be in writing, signed by all jurors concurring therein, and returned by the jury to the judge in open court."

In this case, the jury found appellant guilty of felonious assault and involuntary manslaughter. While it is not good practice to charge the jury on multiple underlying felonies because of potential Crim.R. 31(A) violations, in this case, the error, if any, is harmless because these jurors clearly reached unanimity regarding both felonious assault and involuntary manslaughter. There is no evidence in the record of juror confusion concerning the felony that formed the basis for the involuntary manslaughter conviction and we are not persuaded that the record shows a "patchwork" verdict as appellant argues. Therefore, this assignment of error is not well taken and is overruled.

*Judgment affirmed.*

MATIA, P.J., and KARPINSKI, J., concur.