Harlis Ray Laferty appeals the Vinton County Court's judgment finding him guilty of sexual imposition, a violation of R.C.2907.06. On appeal, Laferty asserts that the trial court erred by admitting "other acts" evidence that reflected poorly on his character. We disagree, because the "other acts" evidence was relevant to establishing Laferty's intent and motive. Laferty also contends that the trial court erred by refusing to enter a Crim.R. 29 judgment of acquittal based on the state's failure to produce corroborating evidence as required by R.C.2907.06(B). We disagree, because the record reveals that the state produced corroborating evidence. Accordingly, we affirm the judgment of the trial court.
 I.
Laferty owns a tanning salon and a convenience store in Vinton County, Ohio. Tina Miller, an employee of Laferty's tanning salon, lodged a complaint that Laferty touched her in an offensive, sexually inappropriate manner. Specifically, Miller alleged that, on the evening of April 17, 1997, she went to Laferty's home, in the normal course of her duties, to drop off some towels and papers from the salon. Laferty asked Miller to come in, and the two discussed expanding Miller's employment duties and pay. Miller testified that as she left Laferty's home, he grabbed her arm, tried to kiss her, pushed her down on the floor, and tried to reach up her shirt and shorts. Miller further stated that she repeatedly told Laferty to stop as she tried to get away from him. When Miller freed herself, she ran to her car and left.
Wesley Bartoe testified that she saw Miller's car parked in Laferty's driveway on the evening of April 17. Bartoe called Miller shortly thereafter to ask why Laferty kept Miller late, and Miller simply stated that they would discuss the matter later. Bartoe testified that she was concerned, so she visited Miller's home the next day. Bartoe further testified that Miller told her that Laferty had fondled her and that she was still too upset to discuss it further.
Miller testified that she opened the tanning salon on April 18, 1997. Marsha Bailey came in for an appointment. Laferty arrived at the salon during Bailey's appointment. He put his arm around Miller's waist and told her he would not give her the pay raise they had discussed unless she slept with him. Miller also testified that Laferty grabbed her breasts and tried to kiss her. She hit the stop button on the tanning bed to get Bailey's attention and pushed Laferty away, whereupon he stormed out.
Bailey testified that she was in the middle of a tanning appointment on April 18, 1997, when the tanning bed went dark. When Bailey exited the tanning closet, Miller told Bailey that she intentionally stopped the bed. Miller explained that she was quitting her job, that she had told Laferty to come get the keys, and that she did not want to be alone when Laferty arrived. Bailey also testified that she could tell Miller was upset by her demeanor and her words.
McArthur Police Sergeant Linda Lowe testified that on April 18, 1997, she received a complaint against Laferty from Miller. When Sgt. Lowe went to take Miller's statement that afternoon, Miller was upset, nervous and crying. Miller's statement formed the basis for a criminal complaint against Laferty.
At trial, Laferty testified in his own defense that he never has made any sexual advances toward Miller or any of his other female employees. On rebuttal, the state called two former employees of Laferty's convenience store. Stephanie Perry testified that Laferty made sexual advances toward her on more than one occasion while she was at work. Specifically, Perry described an incident wherein Laferty asked repeatedly if she "wanted" him. When Perry responded negatively and attempted to leave, Laferty grabbed her and started hugging her until she freed herself and ran away. Jennifer Knox also testified that Laferty was very forward with her, and that he often made sexual passes, both verbal and physical, though she repeatedly told him to leave her alone.
A jury found Laferty guilty of sexual imposition. Laferty appeals, asserting the following assignments of error:
 I. THE TRIAL JUDGE COMMITTED REVERSIBLE ERROR PREJUDICIAL TO THE DEFENDANT BY ALLOWING THE STATE TO INTRODUCE EVIDENCE OF OTHER ALLEGED ACTS OF SEXUAL MISCONDUCT.
 II. THE TRIAL COURT ERRED IN DENYING THE MOTION FOR JUDGMENT OF ACQUITTAL IN THAT THE DEFENDANT WAS CONVICTED SOLELY ON THE ALLEGED VICTIM'S TESTIMONY UNSUPPORTED BY OTHER EVIDENCE IN VIOLATION OF RIGHTS SECURED TO THE DEFENDANT UNDER THE 5TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
 II.
A trial court has broad discretion in the admission or exclusion of evidence, and so long as such discretion is exercised in line with the rules of procedure and evidence, its judgment will not be reversed absent a clear showing of an abuse of discretion with attendant material prejudice to defendant. Rigby v. Lake Cty. (1991), 58 Ohio St.3d 269, 271;State v. Hymore (1967), 9 Ohio St.2d 122, certiorari denied (1968), 390 U.S. 1024. A finding that a trial court abused its discretion implies that the court acted unreasonably, arbitrarily or unconscionably. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court. Berk v. Matthews (1990), 53 Ohio St.3d 161,169.
Due to its highly prejudicial nature, evidence of a person's character is not admissible to prove that he acted in conformity with his character on a particular occasion. Evid.R. 404(A). Additionally, pursuant to common law, the state cannot introduce evidence of a defendant's alleged other crimes, wrongs or acts to illustrate the defendant's poor character. Evid.R. 404(B); State v. Broom (1988), 40 Ohio St.3d 277, paragraph one of the syllabus. Such evidence is especially prejudicial when offered to attack the character for truthfulness of any witness, including the defendant. Evid.R. 608(B).
However, evidence of a defendant's prior conduct is admissible when offered to prove the defendant's "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B). Further, evidence which tends to show the defendant's motive, intent, absence of mistake or accident, or scheme, plan or system is admissible "notwithstanding that such proof may show or tend to show the commission of another crime by the defendant." R.C.2945.59; State v. Greer (1981), 66 Ohio St.2d 139. Though these exceptions must be construed against admissibility, "[i]f the other act does in fact 'tend to show' by substantial proof any of those things enumerated, * * * then evidence of the other act may be admissible." Broom at paragraph one of the syllabus.
In Greer, the court of appeals held that the trial court erred by permitting the state to introduce evidence that the defendants, liquor agents charged with soliciting bribes from a permit holder, had accepted bribes from other permit holders. The court reasoned that, because the agents entirely denied soliciting and accepting money, other acts evidence showing their motive, intent, or absence of mistake was irrelevant. The Ohio Supreme Court reversed and explained that, since proof of exchange of money cannot support a bribery conviction without proof of intent, evidence depicting the agents' motive, intent, plan, or absence of mistake was relevant. Id. at 143. Therefore, the court determined that the trial court did not abuse its discretion by allowing the state to present other acts evidence supporting the motive, intent, or plan component of bribery. Id.
In this case, the trial court permitted the state to introduce testimony showing that Laferty made unwanted sexual advances toward two female employees other than Miller. Laferty asserts that permitting the state to introduce the testimony of these former employees violated Evid.R. 404(A) and 608(B). Specifically, Laferty asserts that the state introduced the testimony attempting to show that Laferty acted in character if he made unwanted sexual advances and testified untruthfully about them.
We find that the testimony adduced from Laferty's former employees shed light upon more than Laferty's character. The incidents tended to show Laferty's intent, motive and plan to isolate his young female employees and make improper, unwanted sexual advances, often including sexual contact, toward them. As in Greer, supra, Laferty entirely denies having contact with his victim. However, also as in Greer, that denial does not change the fact that, to obtain a conviction, the state was required to prove Laferty's intent beyond a reasonable doubt. Specifically, the state needed to prove beyond a reasonable doubt that Laferty intentionally or recklessly disregarded his victim's perception of his advances as offensive. See R.C.2907.06(A)(1).
The incidents at issue here, wherein Laferty's former employees clearly informed Laferty that his advances were offensive, tend to prove that Laferty intended, and did not merely mistakenly or accidentally, initiate sexual advances offensive to his victim. Because Evid.R. 404(B) and R.C.2945.59 specifically permit the state to introduce evidence tending to prove the defendant's intent, motive, or absence of mistake or accident, we find that the trial court did not abuse its discretion in admitting the challenged testimony. Accordingly, we overrule Laferty's first assignment of error.
 III.
In his second assignment of error, Laferty asserts that the trial court erred by failing to grant his motion to dismiss based upon the lack of evidence corroborating his victim's testimony. Specifically, Laferty contends that he was denied due process of law because the trial court did not require the state to strictly adhere to R.C. 2907.06(B). Pursuant to R.C.2907.06(B), no person may be convicted of sexual imposition unless the state produces evidence corroborating the victim's testimony. However, the corroborating evidence "need not be independently sufficient to convict the accused." State v.Economo (1996), 76 Ohio St.3d 56, syllabus. Rather, even "[s]light circumstances or evidence which tends to support the victim's testimony is satisfactory." Id. at syllabus. The state asserts that it did, in fact, produce such corroborating evidence, and therefore that no violation of Laferty's due process rights occurred.
In Economo, the corroborating evidence consisted of: (1) confirmation that the victim had an appointment with the defendant on the date in question; (2) a witness' testimony that the victim appeared frightened and upset, and asked to not be left alone with the defendant; and (3) a witness' testimony that the victim was on the verge of crying upon exiting a room where she had been alone with the defendant. Economo at 60. Similarly, in this case, the corroborating evidence consisted of: (1) Bartoe's testimony that she observed Miller's car in Laferty's driveway on the date and time that Miller alleged Laferty first made offensive sexual advances toward her; (2) Bailey's testimony that Miller appeared frightened, upset and angry, and asked Bailey to stay so that she would not be alone with Laferty; (3) Sgt. Lowe's testimony that Miller was upset and crying shortly after Laferty stopped at the salon where Miller worked; and (4) Bartoe's testimony that the day after Laferty allegedly first made advances toward Miller, Miller was so upset that she could not discuss the incident, except to state that Laferty fondled her.
The state submits that the corroborating evidence it produced is remarkably similar to the evidence the Ohio Supreme Court found sufficient to satisfy the corroboration requirement inEconomo. We agree, and find that the trial court did not err by refusing to grant Laferty's Crim.R. 29 motion for acquittal.
Accordingly, we overrule Laferty's second assignment of error and affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Vinton County Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J.: Concurs in Judgment and Opinion as to A/E II. Concurs in Judgment only as to A/E I.
Grey, J., Retired Fourth District Court of Appeals Judge sitting by assignment: Concurs in Judgment and Opinion.
For the Court
 BY: _________________________ Roger. L. Kline, Judge
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutes afinal judgment entry and the time period for further appealcommences from the date of filing with the clerk.