This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Ellen Packard appeals from the decision of the Summit County Domestic Relations Court which modified a shared parenting plan and named Ellen's ex-husband Aaron Packard the custodial parent of the couple's minor children. This court affirms.
 I. Ellen and Aaron Packard were divorced on December 18, 1996. The decree of divorce included a shared parenting plan for the couple's children, Andrea (DOB April 9, 1992) and Joshua (DOB August 27, 1993). Pursuant to the shared parenting plan, Ellen was the residential parent and legal custodian of the children. Aaron was a firefighter, who worked twenty-four hours on and forty-eight hours off. Ellen worked part-time and occasionally took college classes toward an undergraduate degree. Because of Aaron's work schedule, he often had the children on his days off during the week. Ellen and Aaron had disputes concerning the children's care and visitation days. Ellen moved several times, finally relocating an hour away from Aaron's home. These moves increased the difficulty in accommodating Aaron's visitation rights.
On September 4, 1997, Aaron moved the court to reallocate parental rights and to name him the sole custodial parent. The magistrate ordered the couple into mediation and an agreement was reached. However, on April 16, 1998, Aaron again moved for reallocation of parental rights, appointment of a guardian ad litem, and psychological testing of the parties. On May 11, 1998, the magistrate appointed a guardian ad litem
("GAL") for the children, and ordered "the parties and the minor children [to] submit to a psychological evaluation."
A magistrate's hearing was held on January 13 and February 26, 1999. The parties, the evaluating psychologist, Aaron's current wife Susan, and Ellen's mother testified. The GAL gave her oral report subject to questioning by the parties. The GAL recommended termination of the shared parenting plan. However, the GAL recommended that Ellen should continue as the residential parent. The GAL opined that the parties' lack of cooperation caused problems for the children. The GAL did not believe that a change of residential parent would be in the children's best interest.
Following the hearing, the magistrate recommended termination of the shared parenting plan and that Aaron be named the residential parent. Ellen filed objections to the magistrate's decision, which the court overruled. The court ultimately terminated the shared parenting plan and named Aaron as the residential parent. Ellen filed a timely appeal and assigned five errors.
 II.
Assignment of Error 1
 THE TRIAL COURT ERRED IN ADMITTING THE OUT-OF-COURT STATEMENTS MADE BY THE MINOR CHILD TO THE NON-TREATING PSYCHOLOGIST.
Assignment of Error 3
 THE FINDING BY THE TRIAL COURT THAT THE GUARDIAN AD LITEM RECOMMENDED FATHER AS [THE] RESIDENTIAL PARENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Assignment of Error 4
 THE FINDING BY THE TRIAL COURT THAT FATHER HAD NO PSYCHOLOGICAL SYMPTOMS OR PROBLEMS IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Assignment of Error 5
 THE FINDING THAT THE "SOAP INCIDENT" DID NOT HARM THE PARTIES' MINOR DAUGHTER IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Because these four assignments of error challenge the magistrate's evidentiary rulings and the trial court's findings, they will be discussed together.
The court appointed Dr. Michael Smith, a clinical psychologist, to evaluate the parents and the children to determine whether a change of parental rights and responsibilities was appropriate. Dr. Smith testified about the psychological testing he administered for Ellen, Aaron, and Aaron's wife Susan. Dr. Smith also testified about his observations of how the children interacted with the parents. Dr. Smith also testified that Andrea made certain statements to him during his interview. Ellen's attorney registered an ongoing objection to Dr. Smith's testimony about these statements, on the basis that Andrea's out of court statements were inadmissible hearsay. The magistrate did not determine that Andrea was not competent to testify. Thus, these statements are admissible only if they fall within an Evid.R. 803 hearsay exception permitting out of court statements where the declarant is available. Ellen asserts that these statements are not admissible under the Evid.R. 803(4) exception for hearsay statements made for purposes of medical diagnosis and treatment because Dr. Smith was not Andrea's treating psychologist.
In her first assignment of error, Ellen asserts that the trial court erred in allowing hearsay statements that Andrea prefers to live with her father because mother does not have much food available, mother yells at the children, and there are more children to play with at father's house. Evid.R. 803(4) allows for the admission of out of court statements "made for purposes of medical diagnosis or treatment." The trial court ordered Dr. Smith to conduct an evaluation of the children as well as the parents, and his interview with Andrea was part of the evaluative process. A "trial court has broad discretion in the admission * * * of evidence and unless it has clearly abused its discretion and [a party] has been materially prejudiced thereby, [an appellate] court should be slow to interfere." State v. Hymore (1967), 9 Ohio St.2d 122, 128, certiorari denied (1968), 390 U.S. 1024, 20 L.Ed.2d 281. Assuming, without deciding, that the magistrate abused his discretion by admitting the hearsay statements, Ellen has not demonstrated prejudice. None of Andrea's hearsay statements was included in the trial court's findings of fact as a basis for its determination. This court overrules Ellen's first assignment of error.
In her fourth assignment of error, Ellen claims that the trial court's finding that Aaron had "no psychological symptoms or problems" was against the weight of the evidence. Dr. Smith did diagnose Aaron as having a current relational problem, i.e., the visitation and custody dispute with Ellen, and "Schizoid and Compulsive Personality Features." When asked if Aaron was sufficiently qualified to have parental rights for his children, Dr. Smith stated, "I do not find [Aaron] possessed any kind of psychological symptoms or problems which would negatively affect his ability to be an effective parent." The trial court's summary of Dr. Smith's unrebutted testimony accurately reflects the doctor's conclusion that Aaron has no symptoms or problems relevant to the issue of whether Aaron would be an effective custodial parent.
Ellen points to Dr. Smith's testimony about Aaron's personality features, and then points to the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (1994) ("DSM-IV"). Ellen claims that the DSM-IV "defines these conditions as Axis II personality disorders." However, Dr. Smith never testified that Aaron met all the criteria for personality disorders pursuant to the DSM-IV. Rather, Dr. Smith testified that Aaron had certain personality features. The manifest weight of the evidence, provided solely by Dr. Smith, was that Aaron had no psychological problems or symptoms that would interfere with his ability to parent his children. Ellen's fourth assignment of error is overruled.
Ellen's third assignment of error states that the trial court erred in finding that prior to the hearing the GAL was prepared to recommend that Aaron be named the residential parent. At the hearing, the GAL acknowledged that she told Aaron's attorney in January 1999 that "if pushed to the wall" her inclination at that point would be to recommend Aaron as the custodial parent. However, the GAL also stated that she never was in favor of naming Aaron the custodial parent. In the GAL's opinion, the problems in the family were not the result of Ellen's role as custodial parent, but both parents' desire to fight with one another and put the children in the middle. Ellen correctly states that the trial court misstated the GAL's previous opinion about a change of custodial parent. Furthermore, the trial court indicated that the GAL's "reason for changing her opinion" was based on three factors which the court determined were not relevant. However, the GAL clearly stated at the hearing that a change of residential parent would only add another disruption to the children's lives without accomplishing anything. The GAL opined that the basic problem was not poor parenting by Ellen but the parents' ongoing fighting, putting the children in the middle. It is for this reason that the GAL recommended terminating the shared parenting plan, with Ellen remaining as the residential parent.
However, although Ellen correctly challenges the trial court's finding on this point, she has not shown prejudice. The trial court clearly stated that the GAL did not believe Aaron should be named the residential parent. Furthermore, although the GAL rendered an opinion on this issue, there was an abundance of evidence at the hearing which supported the trial court's determination that, notwithstanding the GAL's recommendation, a change of residential parents was in the children's best interest. Thus, we overrule Ellen's third assignment of error.
In her fifth assignment of error, Ellen claims that the trial court erred in finding that Aaron's method of disciplining of Andrea did not harm her. Aaron testified that on one occasion he disciplined Andrea by putting a small bar of soap in her mouth for five minutes because Andrea talked back to Aaron. Dr. Smith did not testify about this incident because he evaluated the family before the incident occurred. The court found that the incident was not harmful to Andrea. Ellen maintains that the court's determination was not supported by the evidence. However, at the hearing Ellen was asked about "the soap incident." She testified that she knew about the incident prior to the hearing. Ellen was asked "Did you at any point express any concern about that to [Aaron] or want details of that incident?" Ellen replied, "I'm sorry. I don't remember." Apparently, Ellen did not observe any problems with Andrea that would prompt her to even discuss the issue of the soap incident with Aaron. There was no evidence before the trial court to establish that the soap incident harmed Andrea. Ellen's fifth assignment of error is overruled.
 III.
Assignment of Error 2
 THE TRIAL COURT ERRED IN DETERMINING FATHER THE PRIMARY RESIDENTIAL PARENT FOR THE MINOR CHILDREN.
A parent may request the trial court to make a change in the residential parent named in a prior court order. R.C. 3109.04 governs the determination of whether a change of residential parent is warranted. The statute provides:
 (E)(1)(a) The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, his residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
* * *
 (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.
R.C. 3109.04(E)(1)(a).
The Ohio Supreme Court has held that "[i]n determining whether a change in circumstances has occurred so as to warrant a change in custody, a trial judge, as the trier of fact, must be given wide latitude to consider all issues which support such a change." Davis v. Flickinger
(1997), 77 Ohio St.3d 415, paragraph two of the syllabus. The trial court's determination that a change of circumstances has occurred should not be disturbed absent an abuse of discretion. Id., at paragraph one of the syllabus. An abuse of discretion is more than mere error. It must involve "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619,621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
By the time of the magistrate's hearing in January and February 1999, Ellen had moved on several occasions since the divorce. At one point, despite the fact that there was a shared parenting plan involving mid-week visitation, Ellen moved to Wooster, over an hour away from Aaron's home in Tallmadge. On numerous occasions Aaron would drive the children back to Wooster to return them to Ellen, only to find that Ellen was not home. Aaron would wait awhile, then drive an hour back to Tallmadge and put the children to bed. On several occasions Ellen called after 10 p.m. and on one occasion after 2 a.m., demanding that Aaron return the children immediately. On another occasion, when Aaron had the children for his four-week summer visitation, Ellen picked the children up for a mid-week visit and took them with her to Kentucky, without advising Aaron of her intent to do so. One time Ellen drove the children to Aaron's house the night before a scheduled plane trip to visit Aaron's parents in Atlanta. Shortly after arriving, Ellen decided to take the children home and not allow them to travel with Aaron. Andrea was very upset. The next day, Ellen drove the children to the airport in time to catch their flight. Aaron related numerous specific instances of such problematic behavior by Ellen, which was disruptive to the children. When asked about these instances, Ellen frequently stated "I don't remember" and "It's possible." Ellen testified that she intended to move once again, this time to Ashland in order to accommodate her school schedule.
It is clear that since the time of the divorce, the circumstances that permitted a shared parenting plan had changed. Aaron and Ellen were unable to cooperate with one another. Ellen's moves made the frequent mid-week visitations difficult. Ellen then disrupted the schedule by failing to be home for the children. Dr. Smith testified that he observed the children to be more at ease in their father's care. The GAL opined that the children seemed more relaxed with their mother. However, the observations of third parties in the quiet of an office setting diminish in comparison with the Aaron's unrebutted descriptions of Ellen arbitrarily and capriciously disturbing pre-arranged visitation and vacation plans to the distress of the children who were caught in the middle.
This court cannot conclude that the trial court abused its discretion in determining that there had been a change in circumstances since the divorce, that a change of residential parent was in the children's best interest, and that the harm to the children caused by the change was outweighed by the advantages. See R.C. 3109.04(E)(1)(a)(iii); Davis, 77 Ohio St.3d at paragraph one of syllabus.
Ellen's second assignment of error is overruled.
 IV.
Having overruled Ellen's assignments of error, we affirm the judgment of the trial court.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
 ___________________________ WILLIAM R. BAIRD
CARR, J., WHITMORE, J., CONCUR