JOURNAL ENTRY and OPINION
Margaret Ratliff-Santos, defendant-appellant, appeals from the judgment of the Cuyahoga County Court of Common Pleas, Criminal Division, Case No. CR-354881, in which the jury found the appellant guilty of one count of theft in violation of R.C. 2913.02, a felony of the fifth degree. Further, the jury made special findings that the value of the property was greater than five hundred dollars ($500), but less than five thousand dollars ($5,000). The appellant was sentenced to the maximum twelve (12) months for the theft offense.
This case arises out of the termination of a residential lease agreement between the appellant, Eileen Dignan and her husband Mark Zivkovich. At trial, Ms. Dignan testified that she and her husband decided to move to Maine in 1996 to begin a lifelong dream of living in the country. Before leaving for Maine, Ms. Dignan contacted a rental agency in order to find an individual to lease the residence. Thereafter, in February of 1997, with the assistance of the rental agent, the appellant, Ms. Dignan and her husband entered into a residential lease agreement. The appellant paid the rent for the first month, but failed to pay rent over the proceeding five months which resulted in the appellant being evicted.
Ms. Dignan testified that prior to leaving for Maine, she and her husband left behind some personal possessions in the attic. The personal possessions were left in an attic alcove which was boarded up from the floor to the ceiling which made the area look like a blank wall. The personal possessions included items from Ms. Dignan's childhood, furniture, and personal mementos which had sentimental value. It was disputed at trial whether Ms. Dignan or her husband gave the appellant permission to have or dispose of the personal property that was left behind. Ms. Dignan testified that the appellant was aware of personal items which she left behind and that the appellant was told not to remove any of the items. Further, Ms. Dignan's husband and stepson testified that the appellant was never given permission to remove any of the items. The appellant presented testimony from a friend, and her daughter, that they overheard a telephone conversation in which Ms. Dignan allegedly gave the appellant the items in question.
Ms. Dignan testified that in June of 1997, after the appellant was evicted, she returned to inspect the residence and discovered that much of her personal property was missing, including the property stored in the attic alcove. Upon discovering the condition of the residence, the appellant searched the premises for a forwarding address for the appellant. Ms. Dignan testified that she found a bill from a U-Store facility in the appellant's name and contacted the Euclid Police Department to file a theft report. Approximately two weeks later, the Euclid Police Department contacted Ms. Dignan and notified her that her possessions were retrieved from the storage facility rented to the appellant.
Thereafter, an arrest warrant was issued and the appellant eventually turned herself into the authorities. After a jury trial, the appellant was convicted on one count of theft, a fifth degree felony, and sentenced to the maximum twelve (12) month sentence. It is from this conviction and sentence that the defendant-appellant appeals.
The defendant-appellant assigns three errors for this court's review.
The defendant-appellant's first assignment of error states:
 I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR ACQUITTAL PURSUANT TO CRIMINAL RULE 29 ON THE THEFT CHARGE AND THE THEFT CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
The court in State v. Martin (1983), 20 Ohio App.3d 172, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The Martin court stated:
 There being sufficient evidence to support the conviction as a matter of law, we next consider the claim that the judgment was against the manifest weight of the evidence.
 Here, the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. * * * See Tibbs v. Florida (1982), 457 U.S. 31, 38, 42.
State v. Martin, supra, at 175. Moreover, the weight of the evidence and credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The power to reverse a judgment of conviction as against the manifest weight must be exercised with caution and in only the rare case in which the evidence weighs heavily against the conviction. State v. Martin, supra.
In determining whether a judgment of conviction is against the manifest weight of the evidence, this court in State v. Wilson (June 9, 1994), Cuyahoga App. Nos. 64442/64443, unreported, adopted the guidelines set forth in State v. Mattison (1985), 23 Ohio App.3d 10, syllabus. These factors, which this court noted, are in no way exhaustive, include:
 1) Knowledge that even a reviewing court is not required to accept the incredible as true;
2) Whether evidence is uncontradicted;
3) Whether a witness was impeached;
4) Attention to what was not proved;
5) The certainty of the evidence;
6) The reliability of the evidence;
 7) The extent to which a witness may have a personal interest to advance or defend their testimony; and
 8) The extent to which the evidence is vague, uncertain, conflicting or fragmentary.
A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the state has proved the offense beyond a reasonable doubt. State v. Eley (1978),56 Ohio St.2d 169.
In the case at hand, the appellant's conviction was supported by substantial credible evidence upon which the trier of fact could reasonably conclude that the appellant was guilty of the underlying offense. Several witnesses testified that a storage area existed in the attic which contained a number of the victim's personal items. Ms. Dignan and her husband both testified that they never told the appellant that she could have any of the items. Further, the appellant's contention that Ms. Dignan gave the property to her is skeptical in light of the great effort that Ms. Dignan and her husband took in constructing the storage area in the attic alcove. Last, is the fact that the appellant admitted to taking the property which the police retrieved from a storage unit rented by the appellant.
The appellant, in her first assignment of error, further contends that the State of Ohio has an affirmative duty to provide competent evidence that established beyond a reasonable doubt the value of the items subject of the theft charge. The determination of value for purposes of R.C.2913.02 is governed by R.C. 2913.61 which states in part:
 (D) The following criteria shall be used in determining the value of property or services involved in a theft offense:
 (1) The value of an heirloom, memento, collector's item, antique, museum piece, manuscript, document, record, or other thing that had intrinsic worth to its owner and that either is irreplaceable or is replaceable only on the expenditure of substantial time, effort, or money, is the amount that would compensate the owner for its loss.
In determining the value of property, R.C. 2913.61(A) provides in part,
 * * * the jury or court trying the accused shall determine the value of the property or services as of the time of the offense and, if a guilty verdict is returned, shall return the finding of value as part of the verdict. In any case in which the jury or court determines that the value of the property or services at the time of the offense was five hundred dollars or more, it is unnecessary to find and return the exact value, and it is sufficient if the finding and return is to the effect that the value of the property or services involved was five hundred dollars or more and less than five thousand dollars * * *.
At trial, Ms. Dignan testified to the approximate value of several pieces of property which were stolen. Ms. Dignan's testimony revealed that the desk was worth somewhere in the hundreds of dollars; the high chair was probably worth two hundred dollars ($200) to three hundred dollars ($300); a metal antique chair worth eighty dollars ($80) to one hundred dollars ($100); and a danish modern lamp worth probably two hundred dollars ($200) to three hundred dollars ($300). In State v. Sanchez(July 12, 1990), Cuyahoga App. No. 57243, unreported, held that the testimony, Some of the stuff was antiques and heirlooms that were handed down to us, so we had a hard time putting values on it, but we came up with a roughly or approximately $2000.00 worth was sufficient to establish the element of value with regard to the theft offense.
As in Sanchez, in the case at hand, Ms. Dignan testified to the approximate value of the property as she estimated it to be and, based on her testimony, the total value of the property was determined to be in excess of five hundred dollars ($500). Specifically, the jury in further findings found that the value of said property or services, to wit: antique furniture and collectibles was more than five hundred dollars ($500), but less than five thousand dollars ($5,000). There is no evidence in the record that the jury lost its way in estimating the value of the stolen property. The appellant's argument regarding non-specific values of the stolen property as being speculative and against the manifest weight of the evidence is without merit.
Accordingly, the defendant-appellant's first assignment of error is not well taken.
The defendant-appellant's second assignment of error states:
 II. THE TRIAL COURT ERRED IN ALLOWING THE STATE TO PRESENT IMPERMISSIBLE CHARACTER EVIDENCE THAT WAS OTHERWISE IRRELEVANT.
In her second assignment of error the appellant argues that the trial court erred in admitting evidence that the appellant painted swastikas and pentagrams on a wall in the basement of the leased premises, that the appellant had sixteen (16) aliases, and that the police found items of a sexual nature in a storage unit rented by the appellant. We note that the appellant failed to object to any of the testimony regarding the above stated evidence, therefore, in the absence of objection, any error is deemed to have been waived unless it constitutes plain error. To constitute plain error the error must be obvious on the record, palpable, and fundamental so that it should have been apparent to the trial court without objection. See State v. Tichon, (1995),102 Ohio App.3d 758, 767, 658 N.E.2d 16. Moreover, plain error does not exist unless the appellant establishes that the outcome of the trial clearly would have been different, but for the trial court's allegedly improper actions. State v. Waddell (1996), 75 Ohio St.3d 163, 166,661 N.E.2d 1043. Notice of plain error is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. State v. Phillips (1995), 74 Ohio St.3d 72, 83,656 N.E.2d 643.
The testimony elicited regarding the swastikas, pentagram, aliases, and items of a sexual nature clearly do not rise to the level of plain error. At trial, the state presented evidence concerning the condition of the residence after the appellant was evicted which the appellant was able to cross-examine. Likewise, the appellant testified concerning the damage she did to the residence and if she painted anything on the walls. In regard to the painting on the walls, the appellant testified:
 It was silly. At the time I painted a swastika and pentagram. I was feeling like, well, at least all my work is not in vein (sic), they'll have to repaint. I know that was a foolish thing to do but I did that.
The testimony concerning the appellant's aliases was inconsequential and, if anything, it benefitted the appellant in that the appellant was able to explain why she had signed her lease using one name, her storage facility using another, and why she continually misrepresented her age on several forms and applications. The testimony concerning the appellant's aliases was not prejudicial and does not rise to the level of plain error.
Last, the testimony concerning items of a sexual nature found in the storage facility was not objected to by the appellant. Moreover, the testimony was not prejudicial and trivial at best. At trial, Detective Nietert, the investigating officer, testified concerning the contents of the storage unit:
 Well, a lot of the boxes contained personal effects, there were some furniture items, there was some items of sexual nature. That was pretty much about it.
The officer simply was detailing what was recovered from the storage unit and, moreover, the officer did not elaborate on the sexual nature of the items. The officer's testimony in regard to the sexual items was isolated and did not rise to the level of plain error.
In the instant case, the evidence is overwhelming that the appellant took Ms. Dignan's possessions and stored them in her rented storage facility. Even assuming that the questioning in regard to the swastikas, pentagrams, aliases, and objects found in the storage unit was prejudicial, an error does not constitute plain error unless, but for that error, the outcome of the trial clearly would have been otherwise. State v. Cooey (1989), 46 Ohio St.3d 20, 31. A trial court enjoys broad discretion in admitting evidence. This court will not reject an exercise of this discretion unless it clearly has been abused and the criminal defendant thereby has suffered material prejudice. State v. Hymore (1967), 9 Ohio St.2d 122, 128,224 N.E.2d 126, certiorari denied,390 U.S. 1024. The trial court did not abuse its discretion in the case at hand, nor was the appellant materially prejudiced by the testimony.
Accordingly, the defendant-appellant's second assignment of error is without merit.
The defendant-appellant's third assignment of error states:
 III. THE TRIAL COURT ERRED IN IMPOSING A MAXIMUM SENTENCE WITHOUT MAKING THE APPROPRIATE FINDINGS OF FACT.
R.C. 2929.14(C) sets forth the criteria for imposing a maximum prison sentence and states:
 (C) Except as provided in division (G) of this section or in Chapter 2925. of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section.
Since neither (D)(2), (D)(3), and (G) of R.C. 2929.14 apply to the appellant, the trial court was only permitted to impose a maximum sentence on the appellant if the appellant committed the worst form of the offense or posed the greatest likelihood of committing future crimes. While the trial court found that the appellant had previously served a prison term and that a minimum sentence would demean the seriousness of the offense, a review of the record reflects that the trial court did not make the required findings before imposing the maximum sentence. The record reflects the findings of the trial court which state:
 * * * this court has carefully reviewed the pre-sentence investigation report, and has noticed that you served a sentence of two to five years in the State Reformatory for Women in another larceny case, obtaining money under false pretenses in 1990; unlawful flight to avoid prosecution, with passing bad checks, and then this case.
 Based on the fact that you have previously served a prison sentence, this court finds that you are not amendable to community-control sanctions.
The State of Ohio, in its brief, concedes that the trial court did not explicitly state that the appellant posed the greatest likelihood of committing future crimes or the worst form of the offense, but contends that the record was sufficient to demonstrate that such finding was made. This argument is without merit.
An appellate court may only reverse a sentence if it finds by clear and convincing evidence that the sentence is not supported by the record or is contrary to law. In this case, the maximum prison sentence could only be imposed if the appellant was among the offenders who committed the worst forms of the offense or who posed the greatest likelihood for committing future crimes. R.C. 2929.14(C). When the trial court imposes the maximum prison term, it shall state on the record the reasons for imposing the maximum sentence. R.C. 2929.19(B). To impose the maximum sentence there must be a finding on the record that the offender committed one of the worst forms of the offense or posed the greatest likelihood of recidivism. See State v. Banks (Nov. 20, 1997), 1997 Ohio App. LEXIS 5201, Cuyahoga App. No. 72121, unreported, State v. Beasley (June 11, 1998), 1998 Ohio App. LEXIS 2597, Cuyahoga App. No. 72853, unreported. While the court need not use the exact language of the statute, it must be clear from the record that the trial court made the required findings. See Id., State v. Assad (June 11, 1998), 1998 Ohio App. LEXIS 2598, Cuyahoga App. No. 72648, 72649, unreported, State v. Boss (Sept. 15, 1997), 1997 Ohio App. LEXIS 4160, Clermont App. No. CA96-12-107, unreported, State v. Fincher (Oct. 14, 1997), 1997 Ohio App. LEXIS 4623, Franklin App. No. 97 APA03-352, unreported.
In the case at hand, it is not clear from the record that the trial court made the requisite findings in sentencing the appellant to the maximum sentence. There is no evidence in the record that the trial court determined that the appellant committed the worst form of the offense or posed the greatest likelihood of committing future crimes. Since the trial court did not clearly state its reasons for imposing the maximum sentence, the sentence must be vacated and the appellant must be remanded to the trial court for re-sentencing.
Accordingly, the defendant-appellant's third assignment of error is well taken.
Judgment affirmed in part, reversed in part, and remanded for re-sentencing.
This cause is affirmed in part, reversed in part, and remanded for re-sentencing for proceedings consistent with this opinion.
Costs to be divided equally between plaintiff-appellee and defendant-appellant.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
 ____________________________ MICHAEL J. CORRIGAN, JUDGE
KENNETH A. ROCCO, P.J., and JAMES D. SWEENEY, J., CONCUR.