DECISION AND JOURNAL ENTRY
Following a jury verdict in favor of the defendant, the Summit County Court of Common Pleas dismissed the personal injury complaint Matthew Zeber ("Zeber") had brought against Catherine Herd, as parent and natural guardian of the minor Stephanie Herd ("Herd"). The court later denied Zeber's motion for judgment notwithstanding the verdict ("JNOV") and, in the alternative, for a new trial. Zeber has appealed from the dismissal of his complaint, and from the denial of his subsequent motions.[1]
Zeber has asserted that the trial court erred by (1) refusing to permit the plaintiff to call the defendant, as if on cross examination; (2) excluding an MRI report, the authenticity of which had been stipulated; (3) excluding numerous medical bills; (4) improperly limiting the expert testimony of the treating chiropractor. We sustain the first assignment of error, overrule the remaining three as moot, and reverse the judgment of the trial court.
 I
This case arises out of a car accident involving Zeber and Herd. Although Herd's vehicle did not actually touch Zeber's, Herd admitted negligence with respect to the accident. She voluntarily paid a bill for work on Zeber's car. She did not admit liability for any bodily injuries sustained by Zeber. The issues of proximate cause and injury were tried to a jury, which returned a general verdict for the defendant.
Zeber testified that he was approaching an intersection at the lawful speed of thirty-five miles per hour, just before the accident occurred. Herd moved into the intersection, making a right turn on red. She suddenly "shot straight across the intersection." Zeber had to "cut [his] wheel really hard, and [his] car went into a slide, and [he] slammed into — it's like an elevated curb. It's like a storm sewer. And then there's a big curb on both sides of it. It's about a foot high." According to Zeber, the passenger side of his car lifted off the ground as he swerved. It came to rest when the front driver's tire hit the storm sewer and the rear tire hit the curb. Zeber testified that the impact with the curb "slammed [him] into the driver's side of the door" with enough force to "completely [push] the window out of [the] seal" around the door.
Although Zeber initially felt fine, he testified that "[l]ater on that evening, my shoulder started to get real stiff and sore" and that it was bruised by the next morning. In an attempt to find relief from his shoulder pain, Zeber began using a Jacuzzi at his health club four to five times a week. Twenty-two days after the accident, he went to Akron General Hospital. He was given "some kind of shot" but it did not bring him any relief. Two days later he went to the emergency room at St. Thomas hospital because, "I wasn't getting real, good sleep at night because of the fact I couldn't get comfortable. So I pretty much went there out of frustration." He was referred to Dr. Acus, an orthopedic surgeon, for treatment. He received "several shots between Akron General and Dr. Acus" which did not bring significant relief. In addition, Zeber began exercising with a Thera-Band.[2] Near the same time Zeber sought treatment from Dr. Rossi, a chiropractor. Because her treatments did not bring any long-term relief, he abandoned them within a month. He, likewise, stopped seeing Dr. Acus for the next seven months. He continued taking ibuprofen, using the Thera-Band, and using the Jacuzzi. After a year without formal treatment, Zeber's attorney suggested that Zeber seek treatment from Dr. Shullo, a chiropractor. According to Zeber, the treatment he received from Dr. Shullo brought more sustained relief and eventually resolved the pain completely.
Zeber testified that his pain persisted for over a year, giving him headaches when he drove fifteen minutes or more. Zeber also testified that the pain made it difficult for him to perform his work duties. At the time of the accident, and for approximately a year after the accident, Zeber worked as a drywaller. He was subsequently employed by Roto-Rooter. His work at Roto-Rooter involved carrying a two hundred fifty pound machine up and down basement steps, sawing holes in ceilings and wrenching sections of galvanized pipe apart. Zeber testified that he had not previously sustained any shoulder, head or neck injuries, nor had he previously experienced any extended pain in those areas. After he began working for Roto-Rooter, and after Dr. Shullo had resolved his upper back pain, Zeber sought assistance from Dr. Shullo for lower back pain. Zeber did not contend that his lower back pain was a result of the accident.
After Zeber testified, he attempted to call Herd, as if on cross examination He asserted that Herd's counsel "made reference in [his] opening statement that there was no property damage to this car and questioned the mechanics of this injury that [Zeber] just kind of bumped into the curb and [Herd] was there, and I think that she knows that there was damage to the car, and she knows it was more than a bump." The trial court refused to permit Zeber to call Herd, indicating that "the only testimony [sic] about the damage to this car is what the Goodyear folks say in that bill, and that's in the record. * * * He's stuck with that." The court did not address Zeber's contention that Herd had relevant information regarding the nature of the impact.
As part of addressing procedural matters surrounding jury selection, Herd's counsel expressed concern about the magistrate's description of the case to the jury. As part of that concern, Herd's attorney said, "basically * * * we're going to claim there was no crash, and * * * we're going to claim there were no injuries." Although Herd did not testify, her attorney conveyed this theory of the case to the jury. During his opening statement to the jury on Herd's behalf, her counsel minimized the force of Zeber's impact with the curb. Throughout the trial, Herd's counsel repeatedly characterized the steel wheel, the replacement of which was paid for by Herd, as "[a] tire. The rubber part." The questions Herd's counsel asked Zeber about the accident were designed to demonstrate that the accident couldn't have been as violent as Zeber had described it. The questions Herd's counsel asked Zeber about his vehicle were designed to demonstrate that the bulk of the items Herd paid to repair were not caused by the accident, but were part of the normal wear and tear on an older car.
 II
Exclusion of the Testimony of the Defendant
Zeber has asserted that the trial court abused its discretion when it refused to permit him to call Herd as a witness. Evidence that is relevant is admissible. Evid.R. 402. Once it is determined that evidence is relevant, the admission or exclusion of such evidence is left to the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. We will only reverse the judgment of the trial court if we determine that the trial court abused its discretion by excluding the proffered evidence. State v. Hymore (1967),9 Ohio St.2d 122, 128, certiorari denied (1968), 390 U.S. 1024,20 L.Ed.2d 281. The trial court abused its discretion if its actions were "unreasonable, arbitrary, or unconscionable." State v. Adams
(1980), 62 Ohio St.2d 151, 157. If the court abused its discretion in making an evidentiary decision, this court must also find that the exclusion materially prejudiced the complaining party before a reversal is warranted. Hymore,9 Ohio St.2d at 128. Material prejudice occurs when, after weighing the prejudicial effect of the errors, we are unable to find that without the errors the fact finder would probably have reached the same decision. Cf. Hallworth v. Republic Steel Corp. (1950),153 Ohio St. 349, paragraph three of the syllabus.
1. Relevance
Herd stipulated to negligence, as a result of which Zeber ran into the curb. She denied, through her attorney, that the accident was severe enough to cause the injuries sustained by Zeber. So far as the record reveals, there were two witnesses to the impact of Zeber's car with the curb. Zeber asserted that as a result of the impact he was thrown against his window and injured his shoulder. According to Zeber, the resulting injury required medical treatment, and caused lingering pain and suffering for over a year. Through questioning of witnesses, and as part of the opening statement and closing argument, Herd's counsel minimized the force of the impact and suggested that Zeber's injuries were caused by his occupation, rather than by the accident.
Zeber attempted to call Herd because she witnessed the impact. If Herd had testified that the collision between Zeber's car and the curb was severe, that evidence would make it more likely that the lingering pain of which Zeber complained was the result of the violence of the impact. On the other hand, if Herd had testified that Zeber was able to slow his vehicle significantly as he gently slid to the curb it would have made it less likely that Zeber's pain was proximately caused by her negligence. Herd's testimony about whether the collision was violent or gentle is relevant, because it would have made a conclusion that the impact contributed to the pain Zeber experienced either more likely or less likely than it would be without her testimony. See Evid.R. 401
Herd also had an opportunity to see the car immediately after the accident. Her counsel, during questioning and closing arguments repeatedly characterized the vehicle damage as less than that shown on the repair bill she paid on Zeber's behalf, implying that the damage repaired was not caused by the accident. Herd's observation of the car immediately after the accident is relevant to the determination of what damage was caused by the accident. Herd voluntarily paid the repair bill, so the extent of the damage to Zeber's car is not directly relevant to disputed damages. Nonetheless, an accident that caused wheel damage, as is implied by the repair bill, is likely to have been significantly more severe than one that only caused tire damage, as implied by Herd's counsel. Because damage to a car can be indicative of the force of impact, it is relevant to the determination of whether the impact was severe enough to cause the bodily injuries claimed by Zeber. Herd's observations of the damage to Zeber's car were relevant to the determination of whether Herd's negligence was the proximate cause of the physical injuries suffered by Zeber.
2. Abuse of Discretion
Only two questions were submitted to the jury: (1) whether Herd's admitted negligence in causing the accident was the proximate cause of Zeber's injuries, and, if so, (2) what were the extent of those injuries. From the record, it appears that Zeber and Herd were the only two available witnesses to the accident. Herd, via the opening statement of her attorney, the questions he asked, and his closing argument, implied that Zeber was exaggerating the force of the impact and that Zeber's injuries instead resulted from the physical nature of his work. Zeber was not allowed to question Herd directly about her perceptions of the accident.
As a general rule, a civil defendant has a duty to testify if his testimony will provide facts that will aid the court in arriving at a just decision. Oleksiw v. Weidener (1965), 2 Ohio St.2d 147,150. While there may be instances in which the testimony of a party is not legally relevant and should be excluded, or should be excluded for other reasons, this is not one of those instances. Neither party has suggested, and we do not do so here, that the advocacy by Herd's counsel was inappropriate. Zeber suggested, however, that Herd's perception of the accident more nearly matched Zeber's theory of liability than that the theory of non-liability advanced by Herd's advocate. By excluding Herd's testimony, the court permitted her to challenge Zeber's theory of liability arising from the accident via the advocacy of her counsel, while refusing Zeber the opportunity to directly question Herd about her perceptions of the accident.
It was unreasonable, and thus an abuse of discretion, for the court to exclude the testimony of an eyewitness to an accident, the nature of which was disputed and was relevant to a determination of the issue of proximate cause. It was particularly unreasonable because the eyewitness was not just a disinterested individual, whose silence might otherwise pass unnoticed, but the civil defendant whose non-liability was being advocated by her counsel.
3. Prejudice
In order to reverse a judgment on the basis of an erroneous exclusion of evidence, the party seeking reversal must also demonstrate that had the proffered evidence been admitted the factfinder would probably not have reached the same conclusion. The jury was instructed that, in order to find for Zeber, it must find that Herd's admitted negligence "directly produce[d] the injury." The court also instructed the jury that the negligent conduct need not "be the sole or only proximate cause," only that it was a "proximate contributing cause of the injury."
Herd admitted that her negligence caused the accident. The evidence was undisputed that Zeber sought and received treatment for pain from several physicians, beginning approximately three weeks after the accident and continuing off and on for more than a year after the accident. To deny his claim completely then, the jury must have determined that Herd's negligence in causing the accident did not contribute to the Zeber's pain, the existence of which was not disputed.[3]
Herd's theory of the case, conveyed to the jury by her attorney's opening statement, closing argument, and witness questioning, was that the impact was too minor to have caused any injury to Zeber and that the pain was instead idiopathic or was caused exclusively by the physical nature of Zeber's work. The jury never heard directly from Herd about her observations of the impact or of the extent of the resulting damage to Zeber's car. Testimony from Herd, which Zeber suggested would have included that "there was damage to the car" and that the impact "was more than a bump," could have easily convinced the jury that the accident contributed to the pain Zeber later experienced. Had the jury heard a description of the accident and of the damage to Zeber's car from Herd which was inconsistent with the theory of non-liability suggested by her attorney, we cannot determine that the jury would probably still have found in favor of Herd.
We sustain Zeber's first assignment of error.
 Remaining Errors
Because of our resolution of Zeber's first assignment of error, the remaining assignments of error are moot, and are overruled.[4]
 III
We sustain Zeber's first assignment of error because it was an abuse of discretion for the trial court to exclude the testimony of the defendant, one of two eyewitnesses to the severity of the accident. That error resulted in prejudice to Zeber. The judgment of the trial court is reversed and the cause remanded to the trial court for further action consistent with this opinion.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellee.
Exceptions.
 ___________________________ WILLIAM R. BAIRD
FOR THE COURT SLABY, J., CARR, J., CONCUR.
[1] The record contains a properly signed and journalized final judgment disposing of the initial complaint. The post-judgment motions were timely filed and properly disposed of by the April 16, 1999 order of the court. Zeber timely appealed from this denial of his motion for JNOV or, in the alternative a new trial. The record also contains a May 6, 1999 "Magistrate's Order" disposing of the post-judgment motions, and a May 11, 1999 "Order on Motion for Judgment Notwithstanding the Verdict or, in the Alternative, for a New Trial." The later orders appear to be suasponte reconsiderations of issues already finally determined by the trial court and, in any event, the May 11, 1999 order is not signed, journalized, or entered on the Transcript of Docket and Journal Entries prepared by the trial court. This court did not consider these later documents in deciding this appeal.
[2] A Thera-Band is a latex or rubber strip, made in varying degrees of resistance which is used to improve strength, range of motion and cooperation of muscle groups.
[3] Zeber was questioned regarding the extent of the pain, the necessity of some of the treatment for it, and the causation of the pain, but his basic assertion that he experienced pain was not challenged.
[4] Our silence on the merits of the remaining asserted errors is not indicative of either approval or disapproval.