DECISION AND JUDGMENT ENTRY
{¶ 1} Lisa Harley appeals the judgment of the Athens County Court of Common Pleas granting Gregory Harley legal custody of their daughter, Carolyn, and awarding Ms. Harley standard visitation. Ms. Harley contends that no change of circumstances occurred. Because the trial court did not abuse its discretion, we disagree. Ms. Harley also asserts that the trial court committed reversible error by refusing to allow her expert witness to testify regarding the correlation between domestic violence and deviant personality test scores. Because Ms. Harley failed to allege or present any evidence that she suffered domestic violence, we find that the expert's testimony was not relevant, and therefore that any error in refusing to qualify her expert was harmless. Accordingly, we overrule Ms. Harley's assignments of error and affirm the judgment of the trial court.
 I. {¶ 2} Mr. Harley and Ms. Harley have a daughter, Carolyn, who was born on October 23, 1996. Although Mr. Harley and Ms. Harley did not marry until December 30, 1998, the parties do not dispute that Mr. Harley is Carolyn's biological father. On March 1, 2000, Mr. Harley filed for a divorce.
 {¶ 3} On November 30, 2000, the parties entered into an agreed judgment entry granting the divorce, which included an Agreed Shared Parenting Plan. Each party was designated as Carolyn's residential parent during the time he or she had Carolyn. Ms. Harley had Carolyn during the week, and Mr. Harley had Carolyn on the weekends.
 {¶ 4} Following the divorce, Ms. Harley moved several times. At one point, the parties reconciled but did not remarry. Ms. Harley moved back into Mr. Harley's home, and they built an addition on the home to serve as a bedroom for Carolyn. However, the reconciliation failed, and Ms. Harley moved again.
 {¶ 5} On May 17, 2001, Mr. Harley filed a motion requesting the court to reallocate the parties' parental rights and responsibilities based upon a change in circumstances. Specifically, Mr. Harley alleged that Ms. Harley's numerous changes of residence and relationships created an unstable environment for Carolyn. On Mr. Harley's motion, the court appointed Ms. Rachel Binegar as Carolyn's guardian ad litem. Additionally, the court appointed Dr. Suzanne Apple to perform a psychological evaluation of the parties and of Carolyn.
 {¶ 6} At a hearing before the magistrate, Ms. Binegar testified that she had interviewed the parties, Carolyn, and all others with whom Mr. or Ms. Harley asked her to speak. Ms. Binegar observed that Carolyn demonstrates delays in her ability to count and identify colors.
 {¶ 7} Ms. Binegar believed that both parties want to be good parents, but opined that Mr. Harley is better equipped to offer Carolyn the type of stable environment that she needs to thrive. In particular, Ms. Binegar noted that in her observations, Ms. Harley had failed to follow through on plans to get a job and get Carolyn enrolled in a pre-school or Head Start program. Additionally, Ms. Binegar reported that Ms. Harley's relationships, both with men and with Carolyn's babysitters, tended to be erratic and volatile. In contrast, Mr. Harley works consistently, has a plan for Carolyn's preschool, and has a stable residence.
 {¶ 8} Dr. Apple testified that she interviewed both the parents and Carolyn. Like the guardian ad litem, Dr. Apple noticed that Carolyn's skills with counting and identifying colors are delayed compared with other children her age. During her interview with Ms. Harley, Dr. Apple had difficulty getting Ms. Harley to focus on Carolyn. Ms. Harley frequently and almost exclusively blamed Mr. Harley for her problems during the interview. Dr. Apple concluded that Ms. Harley is unwilling to deal with Mr. Harley in an up-front manner, resents him when he requests information about Carolyn, and is unwilling to recognize Mr. Harley's ethical rights as Carolyn's father. In contrast, during her interview with Mr. Harley, Dr. Apple observed that Mr. Harley expressed his concerns about Carolyn's development and his desire to work with Ms. Harley to help Carolyn.
 {¶ 9} Dr. Apple also administered an MMPI test to each parent. Dr. Apple testified that Ms. Harley's test results indicated a personality disorder marked by extreme defensiveness, perhaps a conscious attempt to deceive, and a clinically significant tendency toward immaturity and self-involvement. Dr. Apple testified that Mr. Harley's test results were normal. Dr. Apple recommended that the court award custody of Carolyn to Mr. Harley.
 {¶ 10} Each party presented additional witnesses. Ms. Harley attempted to have Dr. L.D. McClanahan, a psychologist who has worked often with battered women, testify regarding whether victims of domestic violence tend to have abnormal MMPI scores. The magistrate declined to qualify Dr. McClanahan as an expert capable of testifying regarding the relationship between MMPI scores and battered women.
 {¶ 11} Mr. Harley testified that Ms. Harley often refuses to give him information regarding Carolyn's whereabouts and care providers. Mr. Harley also complained that Ms. Harley has failed to provide him with a telephone number so that he can have his scheduled Wednesday evening conversations with his daughter. Mr. Harley testified that his job and residence are stable, and that Carolyn will have her own bedroom and consistent preschool arrangements if she comes to live with him.
 {¶ 12} Ms. Harley testified that, although she has changed residences many times since the divorce, she feels that she has nonetheless provided a stable environment for Carolyn because Carolyn derives stability from always being with her mother. Additionally, Ms. Harley testified that she enrolled Carolyn in a preschool approximately two weeks before the hearing. Ms. Harley stated that she did not start Carolyn in the new school sooner because a spot in the school had just become available.
 {¶ 13} The magistrate issued a proposed decision which ordered that Mr. Harley be named sole legal custodian and residential parent of Carolyn, and that Ms. Harley be granted parenting time with Carolyn pursuant to standard visitation guidelines. Ms. Harley filed written objections to the magistrate's proposed decision. The trial court issued a decision and judgment entry denying Ms. Harley's objections and adopting the magistrate's proposed decision.
 {¶ 14} Ms. Harley appeals, asserting the following assignments of error: "I. The trial court erred in denying Appellant's Objections to Magistrate's Proposed Decision since the trial evidence failed to prove by a standard of clear and convincing evidence that there was a `change in circumstances.' II. The trial court committed reversible error by not qualifying Dr. McClanahan as an expert witness on the Minnesota Multiphasic Personality Inventory (MMPI)."
 II. {¶ 15} In her first assignment of error, Ms. Harley contends that the trial court's determination that a change of circumstances occurred is not supported by clear and convincing evidence.
 {¶ 16} R.C. 3109.04 sets forth the requirements for modifying an allocation of parental rights. Davis v. Flickinger (1997),77 Ohio St.3d 415, paragraph one of the syllabus. R.C. 3109.04(E)(1)(a) provides:
 {¶ 17} "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, his residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child."
 {¶ 18} In assessing the child's best interest, the trial court should look to not only the home environment provided by each parent, but also to the extent to which each parent will permit and encourage the involvement of both parents in the child's life. See Davis at 419. We must afford the trial court wide latitude in considering all the evidence supporting a change. Davis at paragraph two of the syllabus. We afford this latitude because the trial court observes the witnesses' demeanor, gestures, tone and voice inflections, characteristics that do not translate well onto the written page. Thus, the trial court is best able to assess the credibility of the evidence and testimony. Davis at 418, citing Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80-81.
 {¶ 19} A reviewing court may not reverse the trial court's determination of whether a change in circumstances has occurred unless the trial court abused its discretion. Davis at paragraph one of the syllabus. The abuse of discretion standard, as applied in custody cases, requires the reviewing court to affirm the trial court's custody determination as long as the "award of custody is supported by a substantial amount of credible and competent evidence." Davis at 418, citing C.E. Morris v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, andBechtol v. Bechtol (1990), 49 Ohio St.3d 21.
 {¶ 20} An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. In re Jane Doe 1 (1991), 57 Ohio St.3d 135;Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. When applying the abuse of discretion standard, we are not free merely to substitute our judgment for that of the trial court. In re Jane Doe 1; Berk v. Matthews (1990),53 Ohio St.3d 161.
 {¶ 21} After reviewing the record in this case, we find that the record contains a substantial amount of competent and credible evidence supporting the trial court's determination. Specifically, the testimony of the guardian ad litem, Ms. Binegar, and the court-appointed psychologist, Dr. Apple, indicate that Carolyn has fallen behind in her academic skills, and that the stable environment provided by Mr. Harley is likely to help her overcome those delays. The record further reveals that Ms. Harley's frequent changes of residence and of care providers for Carolyn has resulted in abruptly discontinued relationships with caregivers and friends in Carolyn's life. Ms. Harley's personality disorder and tendency to blame Mr. Harley for her problems further complicate the situation. Finally, Dr. Apple's testimony that Ms. Harley does not recognize Mr. Harley's ethical rights as Carolyn's father, combined with testimony regarding Ms. Harley refusing to make Carolyn available for regular telephone calls, indicates that Ms. Harley is less cooperative than Mr. Harley in promoting the non-residential parent's involvement in Carolyn's life.
 {¶ 22} Ms. Harley contends that, contrary to the finding of the trial court, several witnesses testified that Carolyn could count and identify colors just as well as other children her age. However, the record also contains the testimony of Ms. Binegar and Dr. Apple that Carolyn's abilities fall short in those areas. The trial court was in the best position to weigh the credibility of the witnesses. Additionally, Ms. Harley contends that the trial court failed to take into account Carolyn's progress occurring with Ms. Harley's enrollment of Carolyn in a preschool program. However, the record also reflects that Ms. Harley took Carolyn out of earlier school programs, and waited until two weeks prior to the custody hearing before she put Carolyn back into preschool.
 {¶ 23} Ms. Harley next contends that the trial court failed to consider her former boss's testimony that she fired Ms. Harley because Mr. Harley frequently visited her at work or waited for her in the parking lot. However, the record also contains testimony from Ms. Binegar and Dr. Apple that Ms. Harley continuously put off seeking employment and blamed her problems on Mr. Harley. Finally, Ms. Harley contends that the record does not support the trial court's conclusion that she is unwilling to recognize Mr. Harley's rights as Carolyn's father. However, the record contains testimony from Dr. Apple that Ms. Harley feels that Mr. Harley had no right to know where Carolyn is or what she is doing when she is with Ms. Harley. Additionally, Mr. Harley testified that Ms. Harley refused to give him a phone number for contacting Carolyn, information on where they were living, and information on Carolyn's babysitters.
 {¶ 24} In short, the record contains competent, credible evidence that Carolyn has gradually fallen behind in academic skills compared with other children her age. The record contains unrefuted evidence that Ms. Harley changed residences and caregivers for Carolyn frequently over the course of about a year. And the record contains competent, credible evidence that Ms. Harley is less likely to facilitate visitation than Mr. Harley.
 {¶ 25} Ms. Harley finally contends that the court should not find a change of circumstances because her frequent moves, changed relationships, and lack of employment are all Mr. Harley's fault. However, even if we were to accept Ms. Harley's factual allegations blaming her problems on Mr. Harley, we find that the fault for Ms. Harley's problems has little bearing on Carolyn's best interest. Regardless of the roads that took the parties to their current positions, the fact remains that at present Mr. Harley is best equipped to provide a stable environment for their daughter.
 {¶ 26} In sum, we find that the record contains a substantial amount of competent and credible evidence supporting the trial court's determination that a change in circumstances occurred and that Carolyn's best interests will be served by placing her in Mr. Harley's custody. Accordingly, we overrule Ms. Harley's first assignment of error.
 III. {¶ 27} In her second assignment of error, Ms. Harley contends that the trial court committed reversible error by upholding the magistrate's refusal to qualify Dr. McClanahan as an expert on the MMPI test. The court prevented Dr. McClanahan from testifying because he has not published any professional articles on the MMPI or personally conducted any research regarding the correlation between deviant MMPI scores and domestic violence. Ms. Harley contends that Dr. McClanahan's twenty-five plus years of clinical experience gave him specialized knowledge that would have allowed him to assist the trier of fact in determining whether Ms. Harley's deviant score on the MMPI was related to her history of spousal abuse by Mr. Harley.
 {¶ 28} A trial court has broad discretion in the admission or exclusion of evidence, and so long as the court exercises its discretion in line with the rules of procedure and evidence, we will not reverse its judgment absent a clear showing of an abuse of discretion with attendant material prejudice to defendant. Rigby v. Lake Cty. (1991),58 Ohio St.3d 269, 271; State v. Hymore (1967), 9 Ohio St.2d 122, certiorari denied (1968), 390 U.S. 1024. A finding that a trial court abused its discretion implies that the court acted unreasonably, arbitrarily or unconscionably. Blakemore, supra, 5 Ohio St.3d at 219. When applying the abuse of discretion standard, we will not substitute our judgment for that of the trial court. Berk, supra,53 Ohio St.3d at 169.
 {¶ 29} Evid.R. 702 governs the admissibility of expert testimony. The rule provides:
 {¶ 30} "A witness may testify as an expert if all of the following apply:
 {¶ 31} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 32} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 33} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. * * *."
 {¶ 34} In this case, the parties and the trial court limited their analysis to whether Dr. McClanahan is qualified as an expert under Evid.R. 702(B). The trial court found that Dr. McClanahan is not qualified as an expert because he, personally, had not written any publications or participated in any formal studies regarding the correlation between domestic violence and deviant MMPI scores. However, Evid.R. 702(B) does not require an individual to personally participate in forming publications or studies in order to qualify as an expert. Rather, Evid.R. 702(B) merely requires an expert to possess "specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony." Dr. McClanahan testified that in his clinical experience, he had observed a correlation between deviant MMPI scores and domestic violence in "from many, many clients over many years." In addition, Dr. McClanahan reported that he also learned about other professionals who have recognized this correlation through reading professional articles and attending professional seminars or workshops. Thus, Dr. McClanahan possesses specialized knowledge, experience, and education regarding a correlation between deviant MMPI scores and domestic violence. Therefore, we find that the trial court erred in refusing to qualify Dr. McClanahan as an expert on the topic as defined by Evid.R. 702(B).[1]
 {¶ 35} Although we find that the trial court erred in refusing to find that Dr. McClanahan qualified as an expert, we find that the error was harmless because the testimony was not otherwise admissible. In order to be admissible, evidence must be relevant. See Evid.R. 402. "Relevant evidence" is any evidence that has the "tendency to make the existence of a fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. "Generally speaking, the question of whether evidence is relevant is ordinarily not one of law but rather one * * * based on common experience and logic." State v. Lyles (1989), 42 Ohio St.3d 98, 99.
 {¶ 36} In this case, Mr. Harley objected to Dr. McClanahan's testimony both on the grounds that Dr. McClanahan was not qualified as an expert and on the grounds that his proposed testimony was not relevant. Because Dr. McClanahan's proposed testimony related to a correlation between victims of domestic violence and deviant MMPI scores, the testimony is only relevant if the evidence also establishes both that Ms. Harley is a victim of domestic violence and that Ms. Harley has a deviant MMPI score.
 {¶ 37} Although the record contains indications that Ms. Harley told some people that Mr. Harley abused her, the record contains no evidence that Ms. Harley was, in fact, a victim of domestic violence. In particular, Ms. Harley's counselor, who diagnosed Ms. Harley with mild, chronic depression, testified specifically, "my role at the shelter is not to establish whether in fact abuse had occurred or not." Ms. Harley testified at the hearing, and did not allege or even allude to any abuse. Finally, Dr. Apple testified that Ms. Harley did not raise any domestic violence concerns during their initial interview.
 {¶ 38} Because the record does not contain any evidence that Ms. Harley was abused, testimony regarding the correlation between deviant MMPI scores and domestic violence have no relevance in this case. Therefore, although we disagree with the trial court's reasons for refusing to allow Dr. McClanahan to testify, we find that any error was harmless. Accordingly, we overrule Ms. Harley's second assignment of error.
 {¶ 39} Having overruled both of Ms. Harley's assignments of error, we affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 for the Rules of Appellate Procedure.
Exceptions.
Evans, P.J. and Abele, J: Concur in Judgment and Opinion.
[1] We make no finding regarding Dr. McClanahan's proposed testimony in relation to the reliability requirement of Evid.R. 702(C).