JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Wayne Foster, the biological father of C.F. and S.F., appeals the decision of the trial court granting permanent custody of C.F. and S.F. to plaintiff-appellee Cuyahoga County Department of Children and Family Services ("CCDCFS".) For the reasons that follow, we affirm in part and reverse and remand in part.
 {¶ 2} On October 7, 2002, CCDCFS filed a complaint alleging neglect of C.F. and S.F. and requesting temporary custody of them. On January 7, 2003, trial was held on the neglect complaint. Appellant stipulated that he was "terminally ill with cirrhosis of the liver and is unable to provide physical care for the children, but provides financial support." The judge adjudicated the children neglected and CCDCFS was granted temporary custody.
 {¶ 3} Because of appellant's representations about his health, the court did not initially require his participation in the case plan.[1] However, the subsequent permanency plan for the children was reunification with appellant.
 {¶ 4} On April 7, 2003, appellant was present for a preliminary hearing before a magistrate and was ordered to have a medical and psychiatric evaluation and to participate in individual counseling. Visitation for the mother, Deborah Foster, was suspended; the magistrate ordered that "father is not to allow mother in the home or [to participate] in his weekend visitation."
 {¶ 5} The children's visits with appellant were subsequently increased to overnight weekend visits, and appellant and CCDCFS agreed that on June 21, 2003, the children would be returned to appellant's sole custody.
 {¶ 6} In violation of the court's no contact with the children order, appellant allowed mother to move into his home, and on June 13, 2003, a domestic violence incident occurred which resulted in appellant and mother being arrested and jailed. The children witnessed the physical exchange between their parents. The planned reunification between appellant and the children was thereafter postponed.
 {¶ 7} CCDCFS maintains that it subsequently attempted, unsuccessfully, to contact appellant and that appellant failed to visit the children for over three months. Mother was not actively pursuing reunification and, thus, on October 3, 2003, CCDCFS filed a motion to modify temporary custody to permanent custody.
 {¶ 8} On December 1, 2003, CCDCFS conducted a semi-annual review of the case, for which appellant was present. At the review, CCDCFS indicated its intention to follow through with its motion for permanent custody, but also required that appellant would submit to an alcohol and drug assessment and would be referred for parenting and domestic violence services. On January 20, 2004, CCDCFS filed a new case plan with the court, which provided that appellant would be referred for a substance abuse assessment, domestic violence counseling and parenting classes. The agency did not withdraw its motion for permanent custody.
 {¶ 9} After several preliminary hearings, trial was held on August 16, 17, 18 and 19, 2004. Mother indicated that she was unwilling to participate in the trial and stipulated to CCDCFS' request for permanent custody of the children.
 {¶ 10} Three witnesses testified on behalf of CCDCFS. CCDCFS supervisor, Pamela Cameron, testified that in her professional opinion, it was not in the children's best interest to be reunified with appellant. Cameron explained that appellant was unable to maintain sobriety and separation from mother. Cameron further testified that appellant was unable to provide a stable home for the children due to his physical illness. Moreover, Cameron testified that CCDCFS was unable to refer appellant for services after the June 13, 2003 domestic violence incident because "he was not accessible to us due to incarceration and non-response at the family home."
 {¶ 11} Psychologist and chemical dependency counselor Dr. Douglas Waltman testified that appellant was incapable of caring for the children on a daily basis. Dr. Waltman explained that appellant has difficulties setting boundaries and limits with the children and is unable to protect them from harm (i.e., their mother).
 {¶ 12} Jeff Konkoly, the CCDCFS case worker assigned to the case in October 2003, testified that he referred appellant for a substance abuse assessment, but appellant missed his appointment. Appellant was also referred for parenting classes, but Konkoly was unable to verify appellant's attendance. At the time of trial, appellant had only recently started domestic violence classes for which he had been referred.
 {¶ 13} Konkoly explained that the case plan called for the parents to engage in services for basic needs, parenting skills, emotional stability, domestic violence and family relationships, and that because of appellant's failure to satisfy the plan's objectives, permanent custody was in the children's best interest. Konkoly stated the children, who had been in foster care for two years, were doing well in their foster home and relatives were being investigated to adopt the children.
 {¶ 14} After ruling on CCDCFS' motion to show cause why appellant's counsel failed to timely provide the agency with its witness list, the trial court allowed appellant to present his case in limited fashion. William Seifert-Kessell, senior group facilitator for the battered men's program at the Greater Cleveland YWCA, testified that appellant started the program on June 2, 2004, and attended through August 11, 2004. Siefert-Kessell testified that in his experience, it would be "unusual" for a domestic violence victim to remove himself or herself from their perpetrator, but leave his or her children alone with the perpetrator.
 {¶ 15} Appellant testified on his own behalf. He stated that he and mother are alcoholics, and that when they would drink, mother would often become violent toward him and the two would physically fight. Appellant testified that there was a long history of his and mother's drinking and fighting. Appellant testified that when mother would become violent toward him, he would often leave the house, leaving the children alone with mother. On one such occasion, the family's home caught on fire.
 {¶ 16} Appellant stated that he could not remember whether the children were present during the June 2003 domestic violence incident. He further testified that after he was released from jail for the incident, he had contact again with mother which resulted in another physical altercation between them that required him to go to the hospital. Upon release from the hospital, he was taken to the police station, where he was cited for violating the protective order which was issued as a result of the first domestic violence incident. Appellant admitted that he started drinking heavily after the reunification plan was postponed and that he did not visit the children in July and August 2003.[2]
 {¶ 17} Dale Hartman, the children's guardian ad litem, was called by the defense as if on cross-examination. Hartman acknowledged the strides appellant has made in attempting to get his life back together, as well as the children's bond with appellant and their desire to live with him.[3] Hartman, however, concluded that at the time of trial appellant's issues were not completely remedied and would not be completely remedied in the foreseeable future. It was his opinion that granting CCDCFS permanent custody of the children was in their best interest.
 {¶ 18} The trial court granted CCDCFS' motion to modify temporary custody to permanent custody, and on November 24, 2004, issued an entry of permanent custody with its findings of fact and conclusions of law. This appeal follows.
 {¶ 19} Appellant presents seven assignments of error for our review. In his first and second assignments of error, appellant contends that the trial court erred in granting permanent custody of the children to CCDCFS because the agency failed to make reasonable efforts for reunification of the children with him and because granting permanent custody of the children to CCDCFS was against the manifest weight of the evidence, respectively. In his third and sixth assignments of error, appellant contends that the trial court erred by failing to discuss the wishes of the children and their relationship with him in determining their best interest and that the trial court abused its discretion by denying his motion for an in camera interview of the children, respectively. Because these assignments of error are interrelated, we consider them together.
 {¶ 20} This court has set forth the standard of review for permanent custody determinations in In re Glenn (Oct. 19, 2000), 139 Ohio App.3d 105, 742 N.E.2d 1210, and In re Davis
(Oct. 12, 2000), Cuyahoga App. No. 77124. While the trial court must have based its decision on clear and convincing evidence, the standard of review for the appellate court is one of an abuse of discretion.
 {¶ 21} In In re Davis, supra, this court stated that:
 {¶ 22} "While App.R. 12 grants an appellate court the power to reverse trial court judgments and enter those judgments that the court should have rendered, it is inappropriate in most cases for a court of appeals to independently weigh evidence and grant a change of custody. Miller v. Miller (1988), 37 Ohio St.3d 71,74, 523 N.E.2d 846. The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding (i.e., observing their demeanor, gestures and voice inflections and using these observations in weighing the credibility of the proffered testimony) cannot be conveyed to a reviewing court by a printed record. Id., citing Trickey v.Trickey (1952), 158 Ohio St. 9, 13, 106 N.E.2d 772." In reDavis, at 6-7.
 {¶ 23} In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct where there is competent and credible evidence supporting the court's findings of fact and conclusions of law. See Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80, 461 N.E.2d 1273. Accordingly, the trial court's determination in a custody proceeding is subject to reversal only upon a showing of an abuse of discretion. Daileyv. Dailey (1945), 146 Ohio St. 93, 64 N.E.2d 246; Trickey,
supra. Hence, this reviewing court will not overturn a permanent custody order unless the trial court has acted in a manner that is arbitrary, unreasonable or capricious. See Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 24} The R.C. 2151.414 permanent custody determination must be supported by clear and convincing evidence. In re Harding
(Jan. 14, 1993), Cuyahoga App. No. 63520; In Re Hiatt (1993),86 Ohio App.3d 716, 621 N.E.2d 1222. "`Clear and convincing evidence' is defined as that measure or degree of proof which is more than a mere `preponderance of the evidence,' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will provide in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." In re Hiatt at 7, citing CincinnatiBar Assn. v. Massengale (1991), 58 Ohio St.3d 121, 122,568 N.E.2d 1222. An appellate court, in reviewing awards of permanent custody of children to public children services agencies, will affirm judgments supported by some competent, credible evidence. Id., citing Jones v. Lucas Cty. Children Serv. Bd. (1988),46 Ohio App.3d 85, 86, 546 N.E.2d 471.
 {¶ 25} R.C. 2151.414 sets forth the procedures a juvenile court must follow and the findings it must make before granting a motion for permanent custody. Upon an agency's filing of a motion for permanent custody, the court must conduct a hearing. R.C.2151.414(A). According to R.C. 2151.414(B)(1), before a court can grant permanent custody to the moving agency, it must "determine[e] * * *, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 26} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 27} "(b) The child is abandoned.
 {¶ 28} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 29} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 30} R.C. 2151.414(E) provides 16 factors for the court to consider in determining whether the child cannot or should not be placed with the parents. Here, the trial court found that three of the factors were applicable:
 {¶ 31} "3. Following placement outside the home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the children to be placed outside the home, the parents have failed continually and repeatedly to substantially remedy the conditions causing the children to be placed outside the home. R.C. 2151.414(E)(1).
 {¶ 32} "4. The parents have demonstrated a lack of commitment toward the children by failing to regularly support, visit or communicate with the children when able to do so, or by other actions have shown an unwillingness to provide an adequate, permanent home for the children. R.C. 2151.414(E)(4).
 {¶ 33} "5. Mother and father suffer from chronic chemical dependencies that are so severe that they are unable to provide an adequate, permanent home for the children at the present time, and as anticipated, within one year after the Court's hearing on CCDCFS' motion to modify temporary custody to permanent custody. R.C. 2151.414(E)(2)."
 {¶ 34} Upon review, we find appellant's argument that the trial court abused its discretion in finding that CCDCFS used reasonable efforts to reunify appellant with the children persuasive. The two case plans which included appellant (i.e., the January 20, 2004 and December 9, 2004 plans) were developed after CCDCFS filed its motion for permanent custody and was pursuing same. Thus, while appellant and CCDCFS were attempting reunification, there was no case plan in effect for him. We find that reasonable case planning and diligent efforts by CCDCFS would have necessitated a case plan for appellant during the time he was in the process of reunifying with the children.
 {¶ 35} Moreover, we find that the trial court abused its discretion in finding that granting CCDCFS permanent custody was in the best interest of the children.
 {¶ 36} R.C. 2151.414(D) provides that:
 {¶ 37} "(D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353
[2151.35.3] or division (C) of section 2151.415 [2151.41.5] of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
 {¶ 38} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 39} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 40} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 41} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 42} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 43} In this case, Hartman, the children's guardian ad litem, acknowledged the children's bond with appellant and their desire to live with them. Hartman testified, however, that he believed the children did not have the maturity to appropriately decide where they should live and that, based on conflicting statements about where they desired to live, they were tailoring their responses to coincide with what they believed the questioner at the time wanted to hear.
 {¶ 44} During the hearing relative to appellant's motion for an in camera interview of the children, Hartman stated that:
 {¶ 45} "I don't believe it would be in the best interest of the children to subject them to coming down to court [to express their wishes], especially considering I believe the information * * * can't possibly be any different from what I learned from the children."
 {¶ 46} William Weston, counsel for the children, objected to an in camera interview of the children, stating, "I don't think anything could be learned that hasn't already been testified to here today."
 {¶ 47} There is nothing in the record to indicate that having the children, who are parties to the action, testify would have been detrimental to them or that they did not desire to testify. Thus, we find that in determining the best interest of the children, the court abused its discretion by not allowing them, at least, the opportunity to express their desires and the court the opportunity to observe their demeanor, assess their maturity and weigh the credibility of their testimony.
 {¶ 48} Accordingly, appellant's first, second, third and sixth assignments of error are sustained.
 {¶ 49} In his fourth assignment of error, appellant contends that the trial court abused its discretion by admitting prejudicial hearsay. Specifically, appellant argues that the testimony of Cameron, the CCDCFS supervisor, was inadmissible because she was not the social worker originally responsible for the case. We disagree.
 {¶ 50} In a case similar to the case at bar, where a supervisor testified about a case previously handled by a former employee, the Twelfth Appellate District held that, "[t]he fact that the supervisor was not involved with the case from the start reflects only on the weight of her testimony, a determination delegated to the trial court." In re Allen, Licking App. No. 02-CA-26, 2002-Ohio-3477, at ¶ 13.
 {¶ 51} Here, Cameron testified that she monitored the social worker who was originally assigned to the case, actively monitored the case, and was knowledgeable about appellant's case plan. Cameron also testified that she attended at least one semi-annual review at which appellant was present and where the case plan was discussed.
 {¶ 52} Upon review, we do not find that the trial court abused its discretion by allowing Cameron's testimony. Accordingly, appellant's fourth assignment of error is overruled.
 {¶ 53} In his fifth assignment of error, appellant contends that the trial court abused its discretion and violated his federal and state due process rights by preventing him from calling several witnesses in his case-in-chief. Appellant's argument is based upon the trial court limiting appellant's case-in-chief because of his failure to timely submit a witness list to opposing counsel.[4]
 {¶ 54} Loc.R. 30 of the Court of Common Pleas of Cuyahoga County, Juvenile Division, governs witness lists, and provides as follows:
 {¶ 55} "(A) Each party shall submit to the opposing party or counsel a list with the names and addresses of all witnesses, including expert witnesses, expected to be called during trial. A copy of each list shall be filed with the Clerk of Court. Unless otherwise ordered by the Court, the witness lists shall be exchanged no later than fourteen (14) days prior to the trial date or three (3) days after receipt of notice of the trial date, whichever is later. A witness list may be supplemented anytime prior to two (2) business days before the trial date.
 {¶ 56} "(B) No party shall be permitted to call any witness, except rebuttal witnesses, whose name was not included on the witness list or any supplemental list, unless good cause can be shown as to why the need for such witness was not known to the party until after the time for supplementing his/her witness list expired, or unless the identity of the witness was otherwise known to the opposing party. The Court may, however, in its discretion allow any party to call any witness whose name is not on a witness list, when doing so will serve the interest of justice.
 {¶ 57} "(C) This rule shall apply to motion hearings as well as trials."
 {¶ 58} Despite appellant's failure to comply with Loc.R. 30, the trial court permitted him to examine two witnesses from his list: Seifert-Kessell and Hartman. We do not find that the trial court abused its discretion in excluding the remaining witnesses.
 {¶ 59} Appellant had the opportunity to cross-examine two of the witnesses, Dr. Waltman and Konkoly. One of the witnesses' testimony, the original CCDCFS social worker assigned to the case, was presented through Cameron. Another witness, mother, relinquished her rights to the children and declined to participate in trial. Further, she was not subpoenaed by appellant.
 {¶ 60} In regard to the remaining witnesses (appellant's physician, a representative from a drug and alcohol rehabilitation center appellant attended, appellant's employer, and appellant's AA sponsor), we find that appellant has failed to demonstrate that their testimony should have been permitted in the interest of justice. There was no proffer as to what their testimony would have been and, thus, no showing of the prejudicial effect of its exclusion.
 {¶ 61} Accordingly, appellant's fifth assignment of error is overruled.
 {¶ 62} In his seventh and final assignment of error, appellant contends that the trial court abused its discretion by allowing Dr. Waltman's expert testimony. We disagree.
 {¶ 63} Decisions regarding the admissibility of evidence are within the broad discretion of the trial court. State v. Hymore
(1967), 9 Ohio St.2d 122, 128, 224 N.E.2d 126. A decision to admit or exclude evidence will be upheld absent an abuse of discretion. O'Brien v. Angley (1980), 63 Ohio St.2d 159,164-165, 407 N.E.2d 490. Even in the event of an abuse of discretion, a judgment will not be disturbed unless the abuse affected the substantial rights of the adverse party or is inconsistent with substantial justice. Id.
 {¶ 64} "`The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140, quoting State v. Adams (1980), 62 Ohio St.2d 151, 157,404 N.E.2d 144. We conclude that the trial court did not abuse its discretion in allowing Dr. Waltman's testimony.
 {¶ 65} After a hearing pursuant to Daubert v. Merrill DowPharmaceuticals (1993), 509 U.S. 579, the trial court qualified Dr. Waltman as an expert over the defense's objections. Appellant now contends that Dr. Waltman's testimony did not comply with the reliability requirements for expert testimony as set forth in Evid.R. 702.
 {¶ 66} Evid.R. 702 governs expert testimony, and provides that:
 {¶ 67} "A witness may testify as an expert if all of the following apply:
 {¶ 68} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 69} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 70} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. * * *."
 {¶ 71} The trial court heard testimony that Dr. Waltman, at the time of the hearing, had been a licensed psychologist for 19 years, and further, that he has a bachelor's degree in psychology, a master's degree in clinical psychology and a Ph.D. in counseling psychology. He is a chemical dependency counselor III, the highest certification in his speciality. At the time of the hearing, he had been with the court diagnostic clinic for six years, was in private practice as well and had performed approximately 250 custody evaluations.
 {¶ 72} Appellant "does not challenge Dr. Waltman's qualifications on appeal[,]" but argues that his "methodology was inherently flawed as he did not consider Mr. Foster's medical records and did not interview or conduct any testing on Mr. Foster." We are unpersuaded by appellant's argument.
 {¶ 73} While Dr. Waltman acknowledged that he would have liked to have known the status of appellant's medical condition and whether it is likely to deteriorate, he specifically testified that he did not base his conclusion on appellant's medical history. Rather, he assumed that appellant was going to be physically healthy in the future. Accordingly, we do not find that Dr. Waltman's methodology was flawed.
 {¶ 74} In regard to appellant's argument that Dr. Waltman was biased against male victims of domestic violence and low-income/working poor people, that argument goes to the weight of his testimony, not its admissibility.
 {¶ 75} Accordingly, appellant's seventh assignment of error is overruled.
Judgment affirmed in part and reversed and remanded in part.
This cause is reversed and remanded for further proceedings consistent with the opinion herein.
It is, therefore, ordered that appellant recover from appellee costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, P.J., and Kilbane, J., concur.
[1] There were three case plans in this case: a November 27, 2003 plan, from which appellant was exempted, a January 20, 2004 plan and a December 9, 2004 plan, both of which included appellant.
[2] Appellant maintains that the trial court's finding that he did not visit the children from June 2003 through October 2003 is erroneous.
[3] Hartman testified, however, that he believed the children did not have the maturity to appropriately decide where they should live and that, based on conflicting statements about where they desired to live, they were tailoring their responses to coincide with what they believed the questioner at the time wanted to hear.
[4] CCDCFS received appellant's witness list on Thursday, August 12, 2004, two business days before trial began on Monday, August 16, 2004.