[Cite as *State v. Caldwell*, 2014-Ohio-2416.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellee | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | |
| -vs- | : | |
| | : | |
| DENNIS E. CALDWELL | : | Case No. 13CA99 |
| | : | |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Richland County
Court of Common Pleas, Case No.
2013 CR 0455 D


JUDGMENT:      Affirmed


DATE OF JUDGMENT:      June 4, 2014


APPEARANCES:

For Plaintiff-Appellee      For Defendant-Appellant

JAMES J. MAYER, JR.      JOHN C. O'DONNELL
Prosecuting Attorney      10 West Newlon Place
     Mansfield, OH 44902

By: JILL M. COCHRAN
Assistant Prosecuting Attorney
38 South Park Street
Mansfield, OH 44902

*Baldwin, J.*

{¶1}    Appellant Dennis E. Caldwell appeals a judgment of the Richland County Common Pleas Court convicting him of one count of felony domestic violence (R.C. 2919.25(A)) and one count of abduction (R.C. 2905.02).  Appellee is the State of Ohio.

STATEMENT OF FACTS AND CASE

{¶2}    On July 14, 2013, 9-1-1 dispatch in Mansfield received two calls regarding an altercation in the area of 201 Hedges Street.  Neither caller left a name.  One caller indicated that a woman was screaming for help, and the second caller stated that a black male was beating up a white female, and the female was screaming out the window for help.

{¶3}    Mansfield police officers Jason Bamman and Joseph Soehnlen were dispatched at 11:39 p.m.  As they approached the house, Bamman could hear a woman screaming from the second floor, "Let me go," and, "Please get off me."  The front door was unlocked and police entered, going up the stairs toward the sound of the argument.  At the top of the stairs was a doorway to a bedroom.  Appellant was standing in the bedroom with his back to the door, positioned between the door and the bed.  Appellant's wife, R.C., was on the other side of the bed in a defensive posture, with her hands up as if to protect herself.   R.C. could not leave the room without coming into contact with appellant, and she did not appear to be free to leave the room.

{¶4}    Officers ordered appellant to the ground, and appellant complied.  He was handcuffed.  Appellant displayed common signs of intoxication including a strong odor of alcohol and slurred speech.  R.C. was hysterical, visibly shaken, and afraid of appellant.  She had a large knot on her forehead, redness on her lip, and redness and

scratching on her cheek.  Police saw no indications that she was under the influence of drugs or alcohol.

{¶5} Appellant was indicted by the Richland County grand jury with one count of domestic violence in violation of R.C. 2919.25(A), a felony of the third degree by virtue of two prior convictions for domestic violence.  He was also indicted for one count of abduction.  The case proceeded to jury trial in the Richland County Common Pleas Court.

{¶6} R.C. testified at trial that she was married to appellant, and they had a five-year-old son together.  She had two other sons from previous relationships.  All of the boys had been removed from the home by Children's Services the prior year, due to an incident with appellant that resulted in R.C. living in the domestic violence shelter. The boys were living with her mother.  R.C. was living with her mother on July 14, 2013, but would at times visit appellant.  R.C. was on probation at the time and her probation officer had issues with her living with appellant due to appellant's prior record.

{¶7} On July 14, 2013, R.C. testified that she worked for her friends' lawn service until about 5:00 p.m.  She went to appellant's house and made supper for appellant.  Appellant's cousin, Cleve Gordon, was living at the home to help appellant financially.  After dinner, R.C. took a shower and put on a pajama outfit consisting of a tank top and shorts.  Appellant was watching television with Cleve when she came out of the bathroom.  Appellant started an argument over the shorts with R.C., believing she was showing off in front of Cleve.  She changed out of the shorts, but appellant continued the argument.  The fight became physical, with appellant striking R.C. in the head with a shoe and punching her with his fists.  He held his hand over her face to

prevent her from screaming. R.C. wanted to leave the room and go back to her mother's house, but appellant told her she was not going anywhere, and threatened to hurt her if she left.

{¶8} Appellant testified that R.C. did not prepare a meal for him that night. He testified that R.C. and Cleve's girlfriend went to the store to get beer, and the foursome sat around a backyard table drinking. Appellant claimed he nursed a single beer because he is diabetic. He testified that when R.C. went to take a shower, he walked to the store to get cigarettes. When he came home, she had on the pink shorts and top she had testified to wearing, but he was not upset about the shorts. He testified that she wanted the four dollars in change he had remaining from purchasing the cigarettes to go buy some Vicodin. He did not give her the money because he was concerned with her drug use, and with the fact that the kids had been removed from their custody due to R.C.'s drug use. They argued in the bedroom, and R.C. pulled him off the bed and started hitting him with a shoe, injuring his mouth and breaking his teeth. He testified that she struck her head on the nightstand when she pulled him off the bed. He also testified that when she was screaming, "Let me go," the context was suicidal. Appellant testified that the only reason the children were removed from the home was R.C.'s alcohol and drug use.

{¶9} On rebuttal, the State called the caseworker from Children's Services, who testified that the children were removed due to issues of domestic violence and substance abuse. She testified that the children were removed after R.C. and her oldest son were injured in an incident with appellant. The caseworker further testified

that R.C. was taking medication prescribed for her children, and there were concerns with both R.C. and appellant using illegal substances and alcohol.

{¶10} Appellant was convicted as charged and sentenced to three years incarceration on each count, to be served concurrently.  He assigns three errors on appeal:

{¶11} "I.  THE JURY'S VERDICT OF GUILTY WAS AGAINST THE WEIGHT OF THE EVIDENCE.

{¶12} "II.   THE COURT COMMITTED PLAIN ERROR IN ALLOWING EXTRINSIC EVIDENCE BY A CHILDREN [SIC] SERVICES WORKER OF OTHER BAD ACTS.

{¶13} "III.   THE TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO 'OTHER ACTS' EVIDENCE."

I.

{¶14} In his first assignment of error, appellant argues that the judgment of conviction was against the weight of the evidence.

{¶15} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"  *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983).

{¶16}   Abduction is defined by R.C. 2905.02:

{¶17}   "(A) No person, without privilege to do so, shall knowingly do any of the following:

{¶18}   "(2) By force or threat, restrain the liberty of another person under circumstances that create a risk of physical harm to the victim or place the other person in fear[.]"

{¶19}   R.C. testified that during the argument with appellant, she wanted to leave the room and go back to her mother's house, but appellant told her she was not going anywhere, and threatened to hurt her if she left.  Police officer Jason Bamman testified that when they went to the top of the stairs, appellant was standing with his back to the door, positioned between the door and the bed.  Appellant's wife, R.C., was on the other side of the bed in a defensive posture, with her hands up as if to protect herself.   R.C. could not leave the room without coming into contact with appellant, and she did not appear to be free to leave the room.  R.C. was hysterical, visibly shaken, and afraid of appellant.  She had a large knot on her forehead, redness on her lip, and redness and scratching on her cheek.  While appellant's version of the facts contradicted that of R.C. and the police officers, we cannot find that the jury lost its way in believing the testimony of R.C. and the police officer over that of appellant.

{¶20}   Domestic violence is defined by R.C. 2919.25(A):

{¶21}   "(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member."

{¶22}   The evidence was undisputed that appellant and R.C. were married.  R.C. testified that appellant punched her with his fists and hit her in the head with a shoe.

The police officers took photographs showing a knot on her forehead, redness on her lip, and redness and scratch marks on her cheeks. While appellant testified that he did not strike R.C. and that she was the one who was the aggressor by striking him with a shoe, and that she hit her head on the nightstand when she attempted to throw him off the bed, the jury did not lose its way in believing R.C.'s testimony over appellant's.

{¶23} The judgment of conviction of one count of abduction and one count of domestic violence is not against the manifest weight of the evidence. The first assignment of error is overruled.

II., III.

{¶24} In his second assignment of error, appellant argues the court committed plain error in admitting other acts evidence concerning past issues of domestic violence between him and R.C. through the rebuttal testimony of the caseworker, Amanda Campbell. In his third assignment of error, he argues that counsel was ineffective for failing to object.

{¶25} When the prosecutor asked the caseworker about domestic violence concerns in the family, the following colloquy occurred:

{¶26} "MR. BROWN: Judge, I'm going to object to this.

{¶27} "THE COURT: Come to the bench, please.

{¶28} "THEREUPON, the following bench conference began.

{¶29} "THE COURT: I believe it's offered in rebuttal of his testimony that the kids were removed for her drug use.

{¶30} "MS. COUCH-PAGE: Uh huh.

{¶31} "MR. BROWN: Then I'm going to get to ask her questions about drug use, it was a combination of factors.

{¶32} "THE COURT: Yeah, I think if you open up the thing about domestic violence you will be able to ask about drug use. " Tr. 249-250.

{¶33} Therefore, it appears from the record that counsel did object to the questioning of Amanda Campbell concerning past acts of domestic violence. Appellant did not withdraw his objection, but rather upon receiving a ruling, inquired about his ability to use the witness to elicit evidence concerning R.C.'s drug use, in support of his testimony concerning this issue.

{¶34} Appellant argues that the court erred in admitting this evidence, as Evid. R. 608(B) prohibits the use of extrinsic evidence of specific instances of conduct of a witness for the purpose of attacking or supporting the witness's character for truthfulness. The State argues that the evidence is admissible pursuant to Evid. R. 616(C), which provides:

{¶35} "Facts contradicting a witness's testimony may be shown for the purpose of impeaching the witness's testimony. If offered for the sole purpose of impeaching a witness's testimony, extrinsic evidence of contradiction is inadmissible unless the evidence is one of the following:

{¶36} "(1) Permitted by Evid. R. 608(A), 609, 613, 616(A), 616(B), or 706;

{¶37} "(2) Permitted by the common law of impeachment and not in conflict with the Rules of Evidence."

{¶38} "Decisions regarding the admissibility of evidence are within the broad discretion of the trial court. *State v. Hymore,* 9 Ohio St.2d 122, 128, 224 N.E.2d 126

(1967). A decision to admit or exclude evidence will be upheld absent an abuse of discretion. *O'Brien v. Angle,* 63 Ohio St.2d 159, 164–165, 407 N .E.2d 490 (1980). Even in the event of an abuse of discretion, a judgment will not be disturbed unless the abuse affected the substantial rights of the adverse party or is inconsistent with substantial justice. *Id.*" *Beard v. Meridia Huron Hosp.,* 106 Ohio St.3d 237, 2005–Ohio–4787, 834 N.E.2d 323, ¶ 20.

{¶39} Assuming *arguendo* that the testimony of Amanda Campbell was not admissible, any error in its admission was harmless.  The jury heard evidence that appellant had two past convictions of domestic violence, as these convictions were a part of the charge which elevated the crime of domestic violence to a felony.  Tr. 193-194.  Further, appellant was given wide latitude on cross-examination of Amanda Campbell to inquire into R.C.'s drug use.  Campbell's testimony contradicted appellant's claim that the kids were removed from the home solely due to R.C.'s drug use, but her testimony also corroborated appellant's testimony concerning R.C.'s use of drugs and confirmed that her drug use played a role in the removal of the children from the home.

{¶40}   The second and third assignments of error are overruled.  The judgment of the Richland County Common Pleas Court is affirmed.  Costs are assessed to appellant.

By: Baldwin, J.

Hoffman, P.J. and

Farmer, J. concur.