[Cite as *State v. Dailey*, 2015-Ohio-290.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| Plaintiff - Appellee | : | Hon. W. Scott Gwin, P.J. |
| | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | |
| -vs- | : | |
| | : | |
| MATTHEW J. DAILEY | : | Case No. 2014 AP 06 0021 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Tuscarawas County
                                                          Court of Common Pleas, Case No.
                                                          2013  CR 10 0221


JUDGMENT:                                      Affirmed


DATE OF JUDGMENT:                       January 26, 2015


APPEARANCES:

For Plaintiff-Appellee                            For Defendant-Appellant

ROBERT C. URBAN JR.                        MARK A. PERLAKY
Assistant Prosecuting Attorney              Tuscarawas County Public Defender
125 E. High Avenue                               153 N. Broadway St.
New Philadelphia, OH 44663                  New Philadelphia, OH 44663

*Baldwin, J.*

{¶1}   Defendant-appellant Matthew Dailey appeals his conviction and sentence from the Tuscarawas County Court of Common Pleas on one count of felonious assault. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2}   On October 15, 2013, the Tuscarawas County Grand Jury indicted appellant on one count of felonious assault in violation of R.C. 2903.11(A)(1), a felony of the second degree. At his arraignment on October 16, 2013, appellant entered a plea of not guilty to the charge.

{¶3}   Appellant, on April 3, 2014,  filed a Motion to Exclude Prior Bad Acts. Appellant, in his motion, asked that the trial court exclude mention of any conviction of assault and any mention of appellant saying that he was a fighter or participated in fight training and/or competitions.   Prior to the commencement of trial on April 8, 2014, appellee indicated that it would not be presenting evidence of a prior bad act. The trial court stated to defense counsel that "should there be something that comes out in testimony that you believe implicates [Evid.R.] 404 then of course we'll stop, remove the jury, have an argument and I'll make a ruling." Transcript at 9.

{¶4}   At trial, Kelly Nalley, a barmaid at D Kay's Bar and Grill, testified that she was working on the evening of September 11, 2013. She testified that she knew Clay Clark, the victim in this case, because he came in often for their karaoke nights. Clark was in the bar on the night in question. According to Nalley, appellant came into the bar for the first time that night near closing time with two girls, one whom she knew. Nalley testified that the three of them sat around and that when she spoke with appellant at the

juke box, appellant told her that he liked confrontation, that he was "a bad ass", and that he liked to fight. Transcript at 171.

{¶5}   At some point, Clark bought drinks for everyone. According to Nalley, there was a brief exchange between appellant and Clark involving a dispute about the two men's employment, but the matter was resolved. Appellant, Clark and the two girls then played pool together, danced and talked. When asked to describe Clark, Nalley testified that he was a "sweet man" who shook hands with people who came into the bar and befriended everyone. Transcript at 173.  She testified that she was giving Clark a ride home that evening at the close of business, and that they were walking appellant and the two girls out the door.  Nalley testified that when Clark extended his hand to appellant, appellant punched him in the nose and knocked him out.  Clark then fell to the ground. When asked, she stated that there had not been any physical contact between the two prior to such time.  Nalley further testified that Clark had no recollection of what happened.

{¶6}   On cross-examination, Nalley testified that Clark came in a couple of times a week and had six or eight beers and four or five Vegas bombs, which is a mixture of Crown Royal, Red Bull and Peach Schnapps.  She testified that Clark had been at the bar from approximately 8:00 p.m. until 2:00 a.m. Nalley testified that she did not hear appellant whistle for either woman who were with him. She further admitted that in her written statement to police, she did not mention that appellant had bragged about liking confrontation.

{¶7}   The next witness to testify was Kimberly Taylor. She testified that she knew Tara Everhart, who was her neighbor and friend. Taylor testified that on

September 11, 2013, she and Everhart picked up appellant, who she had never met prior to that evening. The three of them went to D Kay's where they hung out with Clark and a man named Cruz. The following is an excerpt from her testimony:

{¶8}   Q:   During the course of the evening did you get the impression he, [appellant] was hitting on your or trying to impress you?

{¶9}   A:   Well, he talked about like fighting and that he was a bad ass I guess.  I don't know.  There was a lot of conversation and unnecessary comments made I guess that made me feel uncomfortable that night.

{¶10}  Q:   What kind of comments?

{¶11}  A:   Just about him fighting and how he has knocked people out before and it just made me feel kind of unsure of my surroundings because I wasn't sure how he was going to react.

{¶12}  Transcript at 216. Taylor, when asked about Clark, testified that he was very nice and respectful and was generous.

{¶13}  According to Taylor, when closing time came, appellant whistled for her to come and Clark asked "Did he just call you ladies like dogs." Transcript at 218. Clark then insisted on walking her to the car. She stated that Clark was putting out his right hand to say goodbye to Everhart when appellant punched him in the face. Taylor indicated that there had not been any fight or words exchanged prior to the punch. Appellant then yelled at the two women to get the car and they left in Everhart's car. Appellant was driving at the time.  The three then went to appellant's house where they changed clothes and then left in his truck and went to Denny's.

{¶14} On cross-examination, Taylor testified that appellant "came off a little bit aggressive", but she did not feel fearful around him. Transcript at 231.

{¶15} Testimony was adduced at trial that Clark told a doctor at the emergency room that he thought that he had been assaulted by two people while working as a bouncer at a bar and that he had lost consciousness for ten minutes. He claimed that he had been punched and kicked in the chest, but x-rays showed no chest injury. Clark was diagnosed with a subdural hematoma. He also had a nasal bone fracture and a tooth knocked out. He later was seen by a neurosurgeon. Appellant had told friends who drove him to the emergency room that he could not remember what had happened and that he had been jumped when he walked out of the bar.

{¶16} Deputy Travis Stocker of the Tuscarawas County Sheriff's Office testified that he was dispatched to the hospital in response to a call that an individual had been assaulted at D Kay's bar. He testified that he spoke with Clark who appeared to be disoriented and who indicated that he did not have much recollection of his injuries. Clark told the officer that when he stuck his hand out to shake appellant's hand, he was struck in the face. Later on, Clark told Deputy Stocker that he thought that there had been a second assailant. Deputy Stocker testified that Clark was confused.

{¶17} The next witness to testify was the victim, Clay Clark. Clark testified that on the evening in question, his relationship with appellant and the two women was cordial. He testified that he did not remember anything after he extended his hand to shake appellant's hand and that he next remembered waking up on the concrete. He was unable to recall telling hospital personnel what had happened. Clark testified that he had never worked as a bouncer and did not remember saying that he did or that

there were two assailants. When asked if he believed that there were two assailants, Clark indicated that he did not.

{¶18} On cross-examination, Clark stated that he did not recall hearing appellant make some kind of whistle or commenting on the same. He also testified that he did not recall telling the doctor at the hospital that he had been assaulted before during multiple confrontations and had lost consciousness. He testified that he had not been in multiple other confrontations before in which he had been assaulted.

{¶19} After the State rested, appellant called Dr. Allan Atienza, an emergency room doctor who consulted with Clark shortly after the incident. The doctor testified that Clark reported being attacked by two known males who kicked him in the head. On cross-examination, he testified that he concluded that Clark had intracranial hemorrhage and nasal bone fractures. He, when asked, testified that it was possible for someone with an intracranial hemorrhage to have confusion issues and memory problems.

{¶20} Appellant testified on his own behalf. He refuted saying to the bartender that he liked confrontation. Appellant also testified that after he whistled for Kimberly Taylor to leave, Clark became "very agitated and he stood up and you could hear his raised voice, he said,….'is he really gonna fuckin whistle for you like dogs?'" Transcript at 403. He further testified that before he reached the car, he heard the bartender yell to come back and "'Don't be disrespectful like that. Come back here'." Transcript 405. According to appellant, he was almost to his car when he felt a pressure on the left side of his head and turned around swinging blindly, striking Clark. He stated that he did not know that it was Clark at the time. When asked, he stated that Clark had not given him

any problems that evening and that he was surprised that Clark hit him on the back of his head.

{¶21} At the conclusion of the evidence and the end of deliberations, the jury, on April 9, 2014, found appellant guilty of felonious assault. Pursuant to a Judgment Entry filed on May 28, 2014, appellant was sentenced to four years in prison.

{¶22} Appellant now raises the following assignment of error on appeal:

{¶23} THE TRIAL COURT ERRED IN ALLOWING TESTIMONY THAT APPELLANT HAD BRAGGED ABOUT BEING A FIGHTER, AS SAID TESTIMONY WAS IMPROPER CHARACTER EVIDENCE UNDER EVIDENCE RULE 404(A) AND (B) AND IRRELEVANT UNDER EVIDENCE RULE 402.

{¶24} THE JURY'S VERDICT OF GUILTY WAS BASED ON SUFFICIENT EVIDENCE.

{¶25} THE JURY'S VERDICT OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

I

{¶26} Appellant, in his first assignment of error, argues that the trial court erred in allowing testimony that appellant had bragged about being a fighter since such testimony was improper character evidence under Evid. R. 404(A) and (B) and irrelevant under Evid.R. 402.

{¶27} The admission or exclusion of evidence is a matter left to the sound discretion of the trial court. *State v. Sage,* 31 Ohio St.3d 173, 180, 510 N.E.2d 343 (1987). Absent an abuse of discretion resulting in material prejudice to the defendant, a reviewing court should be reluctant to interfere with a trial court's decision in this regard.

*State v. Hymore,* 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967). Our task is to look at the totality of the circumstances and determine whether the trial court acted unreasonably, arbitrarily, or unconscionably in allowing or excluding the disputed evidence. *State v. Rogers,* 5th Dist. Richland No. 07 CA 106, 2008-Ohio-6630, ¶ 17, citing *State v. Oman,* 5th Dist. Stark No. 1999CA00027, 2000 WL 222190 (Feb. 14, 2000).

{¶28} Evid.R. 404(A) provides that evidence of a person's character is not admissible to prove the person acted in conformity with that character. Evid. R. 404(B) sets forth an exception to the general rule against admitting evidence of a person's other bad acts. The Rule states:

{¶29} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

{¶30} We concur with appellee that testimony that appellant bragged about liking to fight on the night in question is not evidence of appellant's character or evidence of a bad act. Rather, such testimony related to statements made by appellant to witnesses on the night in question. With respect to Evid.R. 404(B), at trial, defense counsel himself conceded at one point that he did not believe that Evid.R. 404(B) was applicable. Moreover, assuming that such rule is applicable and that appellant's comments were evidence of other crimes, wrongs, or acts, we find that such evidence falls within the exception set forth in Evid.R. 404(B). Appellant was convicted of felonious assault pursuant to R.C. 2903.11(A). Such section states as follows: (A) No person shall

knowingly do either of the following: (1) Cause serious physical harm to another or to another's unborn;.." (Emphasis added).

{¶31} In the case sub judice, appellant testified that he thought that someone had hit him and that he swung blindly, striking Clark. Appellant's statements that he liked to fight and was a "bad ass" were relevant to prove that appellant had guilty knowledge and that appellant did not mistakenly or accidentally strike the victim in this case. Finally, assuming, arguendo, that the admission of appellant's statements was in error, we find that appellant was not prejudiced by the admission of the same. Two witnesses (Nalley and Taylor) and the victim all testified that appellant assaulted the victim without provocation.

{¶32} Appellant's first assignment of error is, therefore, overruled.

### II, III

{¶33} Appellant, in his second and third assignments of error, argues that his conviction for felonious assault was against the sufficiency and manifest weight of the evidence. We disagree.

{¶34} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins,* 78 Ohio St.3d 380, 1997–Ohio–52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held,

> An appellate court's function when reviewing the
> sufficiency of the evidence to support a criminal conviction is

to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

{¶35} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins,* supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶36} Appellant was convicted of felonious assault in violation of R.C. 2903.11(A) which provides, in relevant part, as follows "No person shall knowingly do either of the following: (1) Cause serious physical harm to another …" Based on the testimony set forth in detail in the statement of facts above, we find that, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that appellant knowlingly caused physical harm to Clark.

{¶37} We further find that the jury did not lose its way in convicting appellant. While appellant contends that the testimony of the witnesses was not credible and was contradictory, the jury, as trier of fact, was in the best position to assess credibility. Appellant further maintains that the victim's testimony was questionable because he was unable to recall what had happened when appellant allegedly struck him and told medical personnel things (i.e. that he was a bouncer) that were clearly untrue or were contradicted by other testimony. However, we note that, at trial, there was medical testimony that the victim's confusion and memory loss could result from loss of consciousness.

{¶38} Based on the foregoing, appellant's second and third assignments of error are overruled.

{¶39} Accordingly, the judgment of the Tuscarawas County Court of Common Pleas is affirmed.

By: Baldwin, J.

Gwin, P.J. and

Farmer, J. concur.